ALEXANDER G. McNUTT, GOVERNOR OF MISSISSIPPI, WHO SUES FOR THE USE OF LEGGETT, SMITH, AND LAWRENCE, *v.* RICHARD J. BLAND AND BENJAMIN G. HUMPHREYS.

By a law of the state of Mississippi, sheriffs are required to give bond to the governor for the faithful performance of their duty.

A citizen of another state has a right to sue upon this bond; the fact that the governor and party sued are citizens of the same state, will not oust the jurisdiction of the Circuit Court of the United States, provided the party, for whose use the suit is brought, is a citizen of another state.

Under the resolution passed by Congress in 1789, relating to the use of state jails, and the law of Mississippi passed in 1822, a sheriff has no right to discharge a prisoner in custody by process from the Circuit Court, unless such discharge is sanctioned by an act of Congress, or the mode of it adopted as a rule by the Circuit Court of the United States.

THIS case was brought up by writ of error from the Circuit Court of the United States for the Southern District of Mississippi.

It was a suit upon a sheriff's bond, given by Bland, sheriff of Claiborne county, dated 10th November, 1837, and in the penalty of $15,000.

At the May term, 1837, of the Circuit Court of the United States for the Southern District of Mississippi, Leggett, Smith, and Lawrence, citizens of New York, instituted a suit against George W. McNider, a citizen of Mississippi, and in November following obtained a judgment for $3910 78.

On the 30th December, 1837, Leggett, Smith, and Lawrence sued out a writ of *capias ad satisfaciendum*, against the body of the said

George McNider, which was directed to the marshal of the state of Mississippi. The writ was executed, and McNider taken into custody. The marshal handed him over for safe keeping to Bland, the sheriff of Claiborne county.

Whilst thus in custody, McNider applied to McDougall, a judge of probate, duly commissioned in and for the county of Claiborne, for the benefit of the insolvent law of the state of Mississippi, passed in June, 1822. The forms of that law being complied with, the judge directed McNider to be discharged from imprisonment, and the sheriff accordingly discharged him.

At May term, 1839, Leggett, Smith, and Lawrence brought suit against the sheriff and his securities, of whom Humphreys was one, using for this purpose the name of the governor of Mississippi, to whom the bond had been given. The breach assigned was that the said Bland, in violation of his duty as sheriff, did discharge, release, and set at liberty his said prisoner, not by force or operation of law or in pursuance of any power or process emanating therefrom, but in violation thereof, and without the license or consent of said plaintiffs, or of their lawful agent or attorneys, and against their will, they the said plaintiffs being wholly unsatisfied and unpaid, and said judgment aforesaid being then and there in full force and effect, and not in any respect reversed or annulled, paid off, or discharged.

The defendants pleaded two pleas:

1. That the act of June, 1822, passed by the legislature of Mississippi, provided amongst other things that where an insolvent person should not be able to satisfy or pay his ordinary prison fees, if the creditor, upon notice given to him or her, his or her attorney or agent, should refuse to give security to the jailer or sheriff for the payment of such prison fees, or should fail to pay the same when demanded, the sheriff or jailer should discharge such debtor out of prison; and it was further provided that whereas it was unreasonable that sheriffs should be obliged to go out of their counties to give notice to creditors at whose suit any person might be in custody of such sheriff, where any execution should be delivered to the sheriff of any other county than that where any creditor resided, such creditor should name some person in the county where the execution was to be levied, to be his, her, or their agent for the particular purpose of giving to and receiving from the sheriff any notices which might be necessary relating thereto; and if any creditor should fail

to appoint such agent, the sheriff should not be obliged to give notice previous to the discharge of such prisoner for want of security for his prison fees, but such prisoner should be discharged without any notice to be given to the creditor so failing.

The defendants then averred that Leggett, Smith, and Lawrence, at the time of the commitment, were not residents of Claiborne county, nor were they ever so afterwards, and that they failed to appoint any agent or attorney to receive a notice from the sheriff; that McNider was unable to pay his prison fees, and that the plaintiffs wholly failed to give security to the sheriff for the payment of the said prison fees.

2. That McNider was regularly, and according to the provisions of the acts of the legislature of Mississippi for the relief of insolvent debtors, brought before McDougall, a judge of probate, and then and there, by the order and warrant of the said judge, discharged from the custody of the said sheriff.

The replication of the plaintiffs to the first plea was, that at the time of the discharge of McNider, they had an agent residing within the state of Mississippi, to wit, in the county of Warren, and that no application whatever was made to the plaintiffs or their agent, for the payment of jail fees, or to give security for the same; nor was any notice whatever given to the plaintiffs or their agent or attorney of an intention to discharge the prisoner, or of his application to be discharged, either for that cause or any other.

The replication to the second plea was, that the prisoner was, by virtue of process legally issuing from the Circuit Court of the United States, taken into custody by the marshal of the district, and by him was delivered to the defendant, Bland, for safe keeping, who was then sheriff of the county in which the prisoner was taken. That the prisoner was not discharged from custody aforesaid by virtue of any process emanating from any court of the United States or judge thereof, nor by virtue of any law of the United States, but that he was discharged contrary to the provisions of the several acts of Congress made and provided, prescribing the mode and manner of discharging prisoners confined under process from the courts of the United States.

To both these replications the defendant demurred. There was a joinder in demurrer as to the first; what was done with the second, the record did not show.

The court below sustained both demurrers.

*Jones*, for the plaintiffs in error.

*Walker*, for the defendants.

*Jones* contended

1. That the laws of the United States and of Mississippi, and the bond of the sheriff, bound the defendant to receive and hold McNider as a prisoner, under the laws and jurisdiction of the United States, not of the state of Mississippi.

2. That the pleas of the defendant were insufficient, and whether the replications were good or not, the court would look to the first error in the pleadings, the insufficiency of the pleas.

3. That the United States and Mississippi have each separate systems for insolvent debtors; that they cannot be reconciled with each other.

4. That the courts of the United States and of the states can each look only to their respective systems and act upon them.

5. That the state courts cannot discharge a debtor in confinement under execution from a court of the United States, either under the laws of insolvency, or by any other state authority.

He considered this case as coming fully within the principle established by this court in Duncan *v.* Darst, 1 Howard, 301. No state can change the laws of the United States. The insolvent law of Mississippi is confined to cases where persons are under execution by process issued by any court of record within the state. 1 Howard and Hutchinson, 637. It provides also, that no creditor shall receive any thing unless he shall have obtained a judgment. The discharge by the sheriff in consequence of not being indemnified is also a branch of the state system. The marshal could not have discharged the prisoner, and the sheriff was *pro hac vice* the marshal. The latter was responsible to the former for the fees.

*Walker* contended that the equity of the case was with the defendants, inasmuch as the discharge had been ordered by a court of competent jurisdiction, which would have enforced its order by an attachment. The first replication averred that the plaintiffs had an agent in an adjoining county, which was tendering an immaterial issue. The demurrer to this was therefore properly sustained. There was no question raised below as to the power of the state. But the court below had no jurisdiction in the case, as it was between citizens of the same state. Although this court has decided that where the real party is out of the state, he may use the name of a nominal

plaintiff within it, yet it has also decided that where the assignment is by operation of law, such a plaintiff cannot sue. The law of Mississippi gives no right of action on a sheriff's bond, but provides other remedies. Howard and Hutchinson, 625 *et seq.* They are by motion against the sheriff and his securities.

*Jones,* in reply.

The replication must be overlooked, if the plea itself is bad, which is the case here. It is settled that the real party to a suit is the party for whose use it is brought. The governor's name is only used *pro forma.* If the argument on the other side be sound, there is no remedy on the bond at all; for an escape could not be tried upon motion. The object of requiring a bond was to secure the interest of all the citizens of the state, and yet the bond would become of no use in cases of escape. The law of Mississippi accepting the Resolutions of 1789, gives a remedy to all parties concerned. Howard and Hutchinson, 49.

Mr. Justice BALDWIN delivered the opinion of the court.

As the judgment below was rendered on a general demurrer, it is necessary to ascertain in what part of the pleadings the first demurrable defect occurred, which the defendant here alleges was in the declaration, inasmuch as it appears that the plaintiffs and defendants were citizens of Mississippi, and consequently the court below had not jurisdiction of the case.

By the law of that state, How. and Hut. 290, 291, all sheriffs must give a bond to the governor of the state for the time being, and his successors, conditioned for the faithful performance of the duties of his office; which bond may be put in suit and prosecuted from time to time at the costs and charges of any party injured, until the whole amount of the penalty thereof be recovered. This suit was accordingly brought in the name of the governor, for the use of Legget, Smith, and Lawrence, citizens of New York.

The parties in interest, therefore, had a right to sue the defendants in the Circuit Court in their own names, by a bill in equity in an appropriate use, or by an action of debt, or for an escape against the sheriff himself, as in Darst *v.* Duncan, 1 How. 301, if he made out a cause of action in either form, and we can perceive no sound reason for denying the right of prosecuting the same cause of action against the sheriff and his sureties in the bond, by and in the name of the governor, who is a purely naked trustee for any party injured.

B

He is a mere conduit through whom the law affords a remedy to the person injured by the acts or omissions of the sheriff; the governor cannot prevent the institution or prosecution of the suit, nor has he any control over it. The real and only plaintiffs are the plaintiffs in the execution, who have a legal right to make the bond available for their indemnity, which right could not be contested in a suit in a state court of Mississippi, nor in a Circuit Court of the United States, in any other mode of proceeding than on the sheriff's bond.

It would be a glaring defect in the jurisprudence of the United States, if aliens or citizens of other states should be deprived of the right of suit on sheriffs' bonds in the federal courts sitting in Mississippi, merely because they were taken in the name of the governor for the use of the plaintiffs in mesne or final process, who are in law and equity the beneficiary obligees; we think this defect does not exist. The constitution extends the judicial power to controversies between citizens of different states; the 11th section of the Judiciary act gives jurisdiction to the Circuit Courts, of suits between a citizen of the state where the suit is brought, and a citizen of another state. In this case there is a controversy and suit between citizens of New York and Mississippi; there is neither between the governor and the defendants: as the instrument of the state law to afford a remedy against the sheriff and his sureties, his name is in the bond and to the suit upon it, but in no just view of the constitution or law can he be considered as a litigant party: both look to things not names— to the actors in controversies and suits, not to the mere forms or inactive instruments used in conducting them, in virtue of some positive law.

This court must have acted on these principles in Browne et al. v. Strode, 5 Cranch, 303, which was a suit on an administration bond of an executor, for the faithful execution of the testator's will, in conformity with a law of Virginia, 5 Hen. st. 461, which requires all such bonds to be payable to the justices of the county court, where administration is granted, but may be put in suit and prosecuted by, and at the costs of the party injured. The object of that suit was to recover a debt due by the testator to a British subject; the defendant was a citizen of Virginia; the persons named in the declaration as plaintiffs were the justices of the county, who were also citizens of Virginia, yet it was held that the Circuit Court of that state had jurisdiction. We are aware of no subsequent decision of this court, which in the least impairs the authority of that case, or contravenes the principle

McNutt *v.* Bland et al.

on which it was decided; that where the real and only controversy is between citizens of different states, or an alien and a citizen, and the plaintiff is by some positive law compelled to use the name of a public officer who has not, or ever had any interest in, or control over it, the courts of the United States will not consider any others as parties to the suit, than the persons between whom the litigation before them exists.

Executors and administrators are not in this position, they are the actors in suits brought by them; the personal property of the decedent is vested in them; the persons to whom they are accountable, for whose benefit they act, can bring no suit to assert their rights against third persons, be the cause of action what it may; nor can they interfere with the conducting of the suit to assert their rights to the property of the decedent, which do not vest in them. The personal representative is, therefore, the real party in interest before the court, 12 Pet. 171, and succeeds to all the rights of those they represent, by operation of law; and no other persons are capable, as representatives of the personalty, of suing or being sued. They are contradistinguished, therefore, from assignees who claim by the act of the parties, and may sue in the federal courts in cases where the decedent could not. 8 Wheat. 668; 4 Cranch, 308, S. P. By the 11th section of the Judiciary act, assignees cannot sue where the assignor could not, nor can they sue in their own names if the assignor could, unless the assignees were aliens or citizens of another state than that of the defendant, and the instrument sued on was so assigned as to vest the right of action in the assignees, in which latter case, the suit must be by the party originally entitled to sue. Thus where the payee of a promissory note, which was neither negotiable nor assignable, so as to sustain an action by the assignees, sued for the use of a corporation incapable of suing in the federal courts, this court held that the Circuit Court had jurisdiction, on the ground that the suit was on a contract between the plaintiff and defendant. The legal right of acting being in the plaintiff, it mattered not for whose use the suit was brought, the parties being citizens of different states. Irvine *v.* Lowry, 14 Pet. 298. In that case the decision in 5 Cranch was reviewed and affirmed; and as it is in all respects analogous to, it must govern this and similar cases, where the cause of action is not founded on a contract between the parties or their legal representatives.

The objection to the jurisdiction cannot, therefore, be sustained.

The next question arises on the defendants' first plea in bar, which sets up a discharge of the prisoner by the sheriff, in default of the plaintiff in the execution paying the prison fees due, pursuant to the act of 22d June, 1822, sects. 35, 47 ; Hut. and How. 640—644.

This law, by its own force, cannot apply to persons committed on executions from the courts of the United States, it must first be adopted by act of Congress, or some rule of court under the authority conferred on the courts of the United States by law. It is a peculiar municipal regulation, applicable and intended to apply only to persons committed under state process, as clearly appears by the 62 section of the same law, in the revised code, as to process of the United States. How. and Hut. 649, 650. After reciting in full the resolution of Congress relating to jails, passed in 1789, 1 Story, 70, it proceeds, "And whereas it is just and reasonable to aid the United States therein, on the terms aforesaid, until other provisions shall be made in the premises, it is enacted, That all sheriffs, &c., within this state, to whom any person or persons shall be sent or committed by virtue of legal process, issued by or under the authority of the United States, shall be, and are hereby required to receive such prisoners into custody, and to keep the same safely until they shall be discharged by due course of law, and be liable to the same pains and penalties, and the parties aggrieved be entitled to the same remedies, as if such prisoners had been committed under the authority of the state. The sheriff may require of the marshal the fulfilment of the proposals of the general government, with regard to rent and sustenance, at least quarter yearly ; and on the discharge of the prisoner shall make a statement of charges, &c., to enable him to make his return to the proper department of the general government."

Taking this section of the law in connection with the resolution of 1789, there appears an evident intention in the legislature, that the law should cover the whole resolution, so as to carry it into effect in all its parts and provisions. Hence the terms in each must be made to harmonize ; whereby the phrase in the 62d section, "and to keep the same safely until they shall be discharged by due course of law," will be referred to the corresponding phrase in the resolution, "until they shall be discharged by due course of the law thereof," (the United States,) so as to authorize no discharge by virtue of any state law, incompatible with the resolution. If any doubt could arise on these words in the resolution, "all prisoners committed under the authority of the United States," whether they applied to cases

between individuals, it is removed by the explicit language of the law, "any person or persons who shall be sent or committed by virtue of legal process, issued by, or under the authority of the United States," &c., "and the parties aggrieved shall be entitled to the same remedies," &c., which necessarily embrace all cases, civil or criminal.

As it would be wholly inconsistent with this view of the resolution and law, for the legislature to authorize the sheriff to discharge any person from custody, otherwise than by the due course of the laws of the United States, we cannot attribute such an intention to them, unless the words of their act clearly indicate it; but there is nothing in the act to that effect, or any words which admit of such construction. On the contrary, as the resolution of Congress positively requires it, as the preamble to the state law declares it to be "just and reasonable to aid the United States therein," the enacting part must be taken accordingly; otherwise the law would conflict with the resolution.

The act of Congress passed in 1800 provides for the mode of discharging insolvent debtors, committed under process from the courts of the United States, and the cases in which it may be done; it is obligatory on the sheriffs in every county of the states who have acceded to the resolution of 1789, and no discharge under any state law not adopted by Congress, or a rule of court, can exonerate the officer. Vide 1 Story, 715; 3 Story, 1932, 1939; Suydam *v.* Broadnax, 14 Pet. 75; 10 Wheat. 36, 37. From the time of Palmer and Allen, 7 Cranch, 554, to Darst *v.* Duncan, the language and decisions of this court have been uniform for more than forty years, that a state law, which is "a peculiar municipal regulation, not having any immediate relation to the progress of a suit, but imposing a restraint on state officers in the execution of the process of their courts, is altogether inoperative upon the officers of the United States in the execution of the mandates which issue to them. By the process acts of 1789, 1792, and 1828, Congress have adopted such state laws as prescribe the modes of process and proceedings in suits at common law, as are not in conflict with the laws of the United States, which can be executed by the courts of the United States; which impose no restraint on, or obstruction of their process from its inception till ultimate satisfaction from the defendant, or the marshal, sheriff, or other officer, intrusted with its execution." 2 Pet. 525; 10 Wheat. 40, 56, &c. "Congress, however, did not intend

to defeat the execution of judgments rendered in the courts of the United States, but meant they should have full effect by force of the state laws adopted, and therefore all state laws regulating proceedings affecting insolvent persons," or that are addressed to state courts or magistrates in other respects, which confer peculiar powers on such courts and magistrates, do not bind the federal courts, because they have no power to execute such laws. 1 How. 306; 14 Pet. 74, S. P. For these reasons we are of opinion that the defendants' first plea is defective, in not setting forth a case which justifies the discharge of the person committed on the execution.

The second plea sets up a discharge of the prisoner pursuant to the laws of Mississippi, as an insolvent debtor, by order of a judge of probate; which presents a case covered by the decision of this court in Darst v. Duncan, that such a discharge by a sheriff was no defence to an action of debt for an escape. 1 How. 304. The judgment of the court below must therefore be reversed, and judgment rendered for the plaintiff.

Mr. Justice DANIEL dissented.

From the opinion just pronounced on the part of the court in this cause, I am constrained to differ. Although it ever must be with unaffected diffidence that I shall find myself opposed to a majority of my brethren, still a feeling like that just adverted to, should not, and properly cannot, induce in me a relinquishment of conclusions formed from examinations carefully made, and upon decisions which appear to be distinctly, as they have been repeatedly announced. My opinion is, that the judgment of the Circuit Court against the plaintiff below ought to be affirmed, for the reason that the court could not properly take cognisance of his cause. Under systems of polity compounded as are the federal and state governments of this Union, instances of conflicting power and jurisdiction, real or apparent, will frequently arise, and will sometimes run into niceties calculated to perplex the most astute and practised expositors. For myself, I must believe that the surest preventive of such instances, their safest and most effectual remedy when they shall occur, will be found in an adherence to limits which language in its generally received acceptation prescribes, and in shunning not merely that which such acceptation may palpably forbid; but, as far as possible, whatever is ambiguous or artificial. In adopting or commending the rule thus indicated, I undertake to propound no new principle of

construction to this court, to essay no innovation upon its doctrines. I plant myself, on the contrary, upon its oft repeated decisions, and invoke their protection for the interpretation now insisted upon.

The action in the Circuit Court was instituted in the name of Alexander McNutt, governor of the state of Mississippi, (who was the successor of Charles Lynch,) who sues for the use of Thomas Leggett and others, citizens of the state of New York, against Bland, Humphreys, and Geissen, citizens of the state of Mississippi. It was founded on a bond executed by Bland, as sheriff of the county of Claiborne in the state above mentioned. The pleadings, so far as they relate to the conduct of the sheriff in fulfilment of his duties, or in dereliction thereof, are irrelevant to the question here raised, and need not therefore be examined. The proper question for consideration here is this—whether upon the case as presented upon the declaration, the Circuit Court of Mississippi could take jurisdiction. McNutt is the party plaintiff upon the record, in whom is the legal right of action. Leggett and others, who are said to be the beneficiaries in the suit, and in whom is the equitable interest, are not the legal parties to the suit at law, and could not maintain an action upon the bond to which they were not parties.

Is McNutt to be considered as suing in his private individual character, and the addition " governor of the state of Mississippi," to be regarded as merely a phrase of description? Or is he to be viewed as the representative of the state of Mississippi, or rather as identified with the sovereignty of that state, and having vested in him the exercise of her executive authority?—Let both branches of this inquiry be cursorily pursued. If McNutt is to be regarded as a private party to the action, whether in his own interest, or as the private agent of the state for certain purposes, it would indeed seem to be too late, and entirely supererogatory, to construct an argument to prove, that to warrant either the commencement or prosecution of a suit in his name in a Circuit Court of the United States, his citizenship must be averred and shown upon the record. Decisions to this effect may be said to have been piled upon the question, for they may be traced from a period coeval almost with the passage of the judicial act, down to a comparatively recent day; ranging through at least ten volumes of the decisions of this court: and ruling, it is believed without an exception, that wherever jurisdiction is to be claimed from the citizenship or alienage of parties, such citizenship or alienage must be expressly set forth: ruling moreover, that wherever jurisdiction is

claimed from the character of parties, it must be understood as mean-
ing the parties to the record.

The first case in support of these positions, is that of Bingham *v.*
Cabot et al., from 3 Dall. 382, instituted in 1797, in which the plain-
tiffs were styled in nar. as John Cabot, (with the co-plaintiffs,) de-
scribed as being "all of our said district of Massachusetts," and as
complaining that "said William at Boston being indebted, &c."—
Lee, attorney-general, insisted "that there was not a sufficient allega-
tion in the record of the citizenship of the parties to maintain the
jurisdiction of the Circuit Court; which is of limited jurisdiction."
Dexter, on the other hand, urged "that stating in the declaration the
party to be of a particular place, designates his home, and of course
his citizenship." The court were clearly of opinion, "that it was ne-
cessary to set forth the citizenship (or alienage where a foreigner was
concerned) of the respective parties, in order to bring the case within
the jurisdiction of the Circuit Court." In the year 1797, were de-
cided in the Supreme Court the cases of Turner *v.* Eurille, and of
Turner, admin., &c., *v.* The Bank of North America, reported in
4 Dall., the former at pp. 7 and 8, the latter on pp. 8, 9, 10 and 11.
The declaration in the former case set out a demand by the Marquis
de Casa Eurille, of ——, in the island of ——, against Stanley and
the intestate of Turner and Greene, merchants and partners at New-
bern in the said district. Upon objection to the jurisdiction for want
of a proper description of parties—By the court—"The decision in
the case of Bingham *v.* Cabot et al. must govern the present case;
let the judgment be reversed with costs." Turner, admin. of Stan-
ley, *v.* The Bank of North America was an action upon a promissory
note drawn at Philadelphia by Stanley, endorsed by Biddle and Com-
pany to the Bank of North America. The nar. stated that the presi-
dent and directors were citizens of the state of Pennsylvania, that
Turner the administrator, and Stanley the intestate, were citizens of
the state of North Carolina; but of Biddle and Company, the payers
and endorsers, there was no other description than "that they used
trade and merchandise at Philadelphia or North Carolina." Ells-
worth, chief justice, in delivering the opinion of the court, after
remarking that the Bank of North America, as well as the drawer
of the note, was properly described, proceeds thus: "The error
assigned is, that it does not appear from the record that Biddle and
Company, the promisees, or any of them, are citizens of a state other
than that of North Carolina. The Circuit Court, though an inferior

McNutt v. Bland et al.

court in the language of the Constitution, is not so in the language of the common law. A Circuit Court, however, is of limited jurisdiction, and has cognisance not of cases generally, but only of a few specially circumstanced; and a fair presumption is, not (as with regard to a court of general jurisdiction) that a cause is within its jurisdiction unless the contrary appears, but rather that a cause is without its jurisdiction till the contrary appears. This renders it necessary to set forth, upon the record of a Circuit Court, the facts and circumstances which give jurisdiction, either expressly or in such manner as to render them certain by legal intendment. Among those circumstances, it is necessary, where the defendant is a itizen of one state, to show that the plaintiff is a citizen of some other state, or an alien. Here the description of the promisee only is, that he used trade at Philadelphia or North Carolina, which contains no averment that he was a citizen of a state other than North Carolina, or an alien. We must therefore say there was error." In Mossman v. Higginson, 4 Dall. 14, the same doctrine is affirmed, and the court conclude their opinion with the following explicit language: "Neither the Constitution, nor the act of Congress, regards, on this point, the subject of the suit, but the parties. A description of the parties is therefore indispensable to the exercise of jurisdiction. There is here no such description." The case of Course et al. v. Stead et ux., 4 Dall. p. 22, is marked by one trait which peculiarly illustrates and enforces the principle ruled in the cases previously cited. In this last case, a supplemental bill was filed making a new party to a suit previously pending, but in the supplemental bill no description of the citizenship of this new defendant was given: the absence of such description having been assigned for error, it was contended that such a description was not necessary in the supplemental suit, which is merely an incident of the original bill brought in the same court; but the Supreme Court sustained the objection, and reversed the decree of the Circuit Court on the ground of jurisdiction. Next in the order of time is the case of Wood v. Wagnon, 2 Cranch, 9. Where the statement in the pleadings was that Wagnon, a citizen of Pennsylvania, showeth, that James Wood, of Georgia, &c. The judgment was reversed for the defect that the plaintiff and defendant were not shown by the pleadings to be citizens of different states.

In Hepburn and Dundas v. Elzey, 2 Cranch, 445, the decision turned upon a defect in the description of a party necessary to give

jurisdiction.   Winchester *v.* Jackson, 3 Cranch, 515.   The writ
of error was dismissed for want of jurisdiction, the parties not ap-
pearing upon the record to be citizens of different states.   In Kemp's
Lessee *v.* Kennedy, this court declare, that "the courts of the United
States are all of limited jurisdiction, and their proceedings are erro-
neous if the jurisdiction be not shown upon them." 5 Cranch, 185.
The same in effect, the same indeed in terms, is the decision of this
court in Montalet *v.* Murray, 4 Cranch, 46.   Again, the principle
that the character which authorizes access to the Circuit Court must
be apparent upon the record, is strikingly exemplified in Chappede-
laine et al. *v.* Dechenaux, 4 Cranch, 306.   In this case, the plaintiffs
were trustees, not suing in their own interest; yet as they were aliens
and as such entitled to sue in the Circuit Courts of the United States,
this court, in virtue of that character, and their title flowing there-
from apparent on the record, sustained the jurisdiction of the Circuit
Court.   Passing, with a mere mention of them, the cases of the Hope
Insurance Company *v.* Boardman et al., 5 Cranch, 57 ; Hodgson and
Thompson *v.* Bowerbank et al., 5 Cranch, 303 ; Skillern's Ex'rs *v.*
May's Ex'rs, 6 Cranch, 267 ; The Corporation of New Orleans *v.*
Winter, 1 Wheaton, 91, all full to the point; I will quote an em-
phatic and more comprehensive affirmation of Judge Washington in
reference to the powers of the Circuit Courts, expressed in the opinion
of that judge in McCormick and Sullivant, 10 Wheat. 199 : "They
are all (says he) of limited jurisdiction.   If the jurisdiction be not
alleged in the proceedings, their judgments and decrees are erroneous,
and may upon a writ of error or appeal be reversed for that cause."
But the fullest and clearest exposition and vindication of the doctrine
contended for in this opinion, will be found in the reasoning of Chief
Justice Marshall, in delivering the decision in the case of Osborn *v.*
The Bank of the United States.   The portion of the reasoning par-
ticularly referred to commences on the 856th page of the 9th volume
of Wheaton :   "The judicial power of the Union," says the chief
justice, "is also extended to controversies between citizens of differ-
ent states; and it has been decided that the character of the parties
must be shown on the record.   Does this provision depend on the
character of those whose interest is litigated, or of those who are
parties on the record ?   In a suit, for example, brought by or against
an executor, the creditors or legatees of his testator are the persons
really concerned in interest: but it has never been suspected that, if
the executor be a resident of another state, the jurisdiction of the

federal courts could be ousted by the fact that the creditors or legatees were citizens of the same state with the opposite party. The universally received construction in this case is, that the jurisdiction is neither given nor ousted by the relative situation of the parties concerned in interest, but by the relative situation of the parties named on the record. Why is this construction universal? No case can be imagined in which the existence of an interest out of the party on the record is more unequivocal than in that which has been stated. Why then is it universally admitted, that this interest in no manner affects the jurisdiction of the court? The plain and obvious answer is, because the jurisdiction of the court depends not upon this interest, but upon the actual party on the record." Again he remarks, p. 857, "It may, we think, be laid down as a rule which admits of no exception, that in all cases where jurisdiction depends on the party, it is the party named in the record. Consequently, the 11th amendment, which restrains the jurisdiction granted by the Constitution over suits against states, is of necessity limited to those suits in which a state is a party on the record."

This reasoning of the late chief justice seems to meet the present case in every aspect of which it is susceptible, and to dispel every shade of doubt that could possibly be cast upon it. The doctrine this reasoning so well sustains, is reaffirmed by the same judge, in the still later case of the State of Georgia *v.* Juan Madrazo, 1 Peters, 122; and amongst other authorities there cited, the principles ruled as above mentioned in Osborne *v.* The Bank of the United States are referred to and approved. *Vide* also Keary et al. *v.* The Farmers' and Mechanics' Bank of Memphis, 16 Pet. 90.

Alexander McNutt, in the case under examination, must be regarded as a private person acting in a private capacity; at most as a mere agent under a law of Mississippi, in whom the interests of other individuals may to a particular extent have been vested, and through whom they were authorized to sue. He represented or was identified with no political or fiscal rights or interests of the state of Mississippi. That state had no interest involved in the conducting of that suit by McNutt, and much less was she a party to the record in that suit. Standing then in the relation of a mere agent in the transaction, and there being no law of the United States investing the federal courts with jurisdiction as incident to such agency, he could have access to those courts, and the courts themselves could have jurisdiction, solely in virtue of his character of citizen of a state different from that in

which the defendants resided, and that character it was indispensable should appear upon the record. These are positions which it has seemed to me impossible successfully to assail; positions encompassed with a chain of authorities comprehending the entire existence and duration of the government itself. This, however, is said to have been broken by the act of this court, and by that act an opening made for farther power and jurisdiction in the Circuit Courts. The mean by which such important consequences are supposed to have been effected, is the decision of the case of Browne et al. v. Strode, to be found in 5 Cranch, 303. In this case, which was submitted without argument, and in which the certificate directed to the Circuit Court is comprised in two lines, no reason whatever is assigned for the conclusion at which the court appear to have arrived. The facts of the case, as presented in the short abstract of it, are thus stated: "It was an action upon an executor's bond given in conformity with the laws of Virginia. The object of the suit was to recover a debt due from the testator in his lifetime to a British subject. The defendant was a citizen of Virginia. The persons named in the declaration as plaintiffs, were the justices of the peace for the county of Stafford, and were all citizens of Virginia." The court ordered it to be certified as their opinion "that the court below has jurisdiction in the case." This is the whole case, and it is confidently believed to stand entirely solitary; without support, and without a likeness in the whole history of our jurisprudence: and, in commenting upon this case, it may be safely asserted, that if the court in their certificate have intended to affirm, that the holders of equitable interests, *cestui que trusts,* who are not the holders of the legal interests, or rights of action at law, are in actions at law the regular and proper parties to the record, then, indeed, they have not merely overturned the series of decisions in this court, from the case of Bingham v. Cabot, in 3 Dall., decided in 1798, down to the case of the Governor of Georgia v. Madrazo, 1 Peters, 110 ;—they have reversed, moreover, what is believed has been regarded as a canon of the law, wherever the principles of the common law have been adopted; and this they have accomplished by one short sentence, and without a single word to explain this mighty revolution. But can it be reasonably presumed that this court have in so cursory a mode intended to reverse its own well-considered, well-reasoned, and oft-repeated decisions; and this, too, without professing to review them—nay, without one word of reference to them of any kind? A

presumption like this seems scarcely compatible with that cautious reluctance with which innovation on settled principles is always admitted by the courts. Is it not far more probable, that the short and isolated abstract in question, exhibits an imperfect picture of the action and purposes of the court as applicable to some particular state of case which may not be fully and accurately given, for the record of the case in the court below is not set out *in extenso*. But let it be supposed that the objects and the language of the court, in the case of Browne and Strode, are accurately given; still the inquiry recurs, does that case establish the law of this cause at the present day? Browne and Strode was decided in 1809. Turning, for the moment, from the decisions of this court prior to 1809, supposed (strong, and explicit, and numerous as they are) to have been silently demolished by Browne and Strode, what must be understood with respect to the decisions of Skillern's Ex'rs *v.* May's Ex'rs, 6 Cranch, 267; of Osborne *v.* The Bank of the United States, 9 Wheat. 733; of McCormick *v.* Sullivant, 10 Wheat. 199, and of The Governor of Georgia *v.* Madrazo, 1 Peters, 110—all posterior in date to 1809? If these cases are to be received upon the import solely of their own terms, uninfluenced by any reference to prior decisions, still as they are posterior in time to Browne and Strode, and are wholly irreconcilable therewith, they should be understood as controlling and reversing that decision. How much stronger then, nay how irresistible appears this conclusion, when it is ascertained that the several decisions subsequent to 1809 refer expressly to those of previous date, rely upon them as forming their own foundation, and reaffirm them as the law of the federal courts.

The only decision in this court which would appear, upon a superficial view of it, to give colour to the decision of Browne et al. *v.* Strode, is the case of Irvine *v.* Lowry, reported in 14 Peters, 293. An attentive examination of the latter case, however, will show that, so far from resembling Browne and Strode, the facts of the two cases differ essentially; and that the former does not sustain, but, in effect, contradicts the latter. In Irvine *v.* Lowry the action was in the name of Irvine the payee of the note, for the benefit of the Lumberman's Bank. On behalf of Lowry the defendant, exception was taken to the jurisdiction upon the ground that the Lumberman's Bank, the beneficiaries in the suit, consisted, in part, of persons who were citizens of the same state to which the defendant belonged. The case of Browne et al. *v.* Strode was relied on to show that these

beneficiaries and not the nominal parties or those who held the legal interest, should be considered the true parties on the record. This exception was overruled, and the jurisdiction sustained in the name of the party holding the legal right, in conformity with the current of authorities before cited. 'Tis true that, in the opinion delivered in this case, the decision in Browne et al. *v.* Strode is mentioned, and accounted for upon an hypothesis which by no means divests it of its anomalous character, any more than it rests the case of Irvine *v.* Lowry upon any real similitude with it. The argument is this, that although in Browne et al. *v.* Strode the plaintiffs and defendant were citizens of the same state, yet the statute of Virginia, which requires the executor's bond for the protection of creditors and legatees, passes the legal right to those whose interests the bond is designed to protect. To this reasoning several answers at once present themselves, either of which appears to be sufficient. 1. If this could be so understood, it would leave the objection precisely where it stood before. The parties to the action would still be all citizens to the same state, whereas the judicial act declares they shall be (that is the plaintiffs and defendants) of different states. 2. The Virginia statute professes to effect no such transmutation of legal rights. 3. It confers no right of action on the beneficiaries under the bond. 4. It orders the prosecution of the suit in the names of the justices the obligees, and by consequence, forbids such proceeding in the names of any other persons. 5. In point of fact, in the case commented on, (as doubtless would be found to be the fact in every suit ever instituted under the statute,) the action was brought in the names of the justices, so that those whose interests were designed to be protected by the bond, were never parties to the suit at all, much less the real or only parties representing the right of action under the bond.

My mind, then, is impelled, by considerations like these, to the deductions, that Browne *v.* Strode does not furnish the rule for the decision of this cause; and that, if it ever was a rule for the federal courts, it has been clearly and emphatically annulled. As a corollary from the above reasoning and the cases adduced in support thereof, it follows, that Alexander McNutt, without appearing as the party plaintiff upon the record to be a citizen of some state other than that to which the defendants belong, could have no standing in the Circuit Court; and that failing so to appear, the Circuit Court could have no jurisdiction over the cause.

It cannot be requisite here to meet any argument, should any be attempted, designed to maintain the right of McNutt to sue in virtue of his character of governor of Mississippi, and as such representing the sovereign or supreme executive power of that state. In that aspect, the suit would be virtually by the state herself, and not be the suit of Alexander McNutt; such a suit, too, could take place only where some direct right or interest of the state should be involved. Of such a controversy, the Circuit Court could unquestionably have no jurisdiction; this having been settled as one of those instances, the cognisance whereof belongs exclusively to the Supreme Court. *Vide* The State of Georgia *v.* Brailsford, 2 Dall. 402, and The Governor of Georgia *v.* Madrazo, 1 Peters, 110; Fowler et al. *v.* Lindsay et al. 3 Dall. 411.

To any argument, *ab inconveniente,* which may be urged in support of the jurisdiction in this case, I would simply oppose the observations of two distinguished members of this bench, in reply to a similar argument addressed to them in the case of Turner, admin., &c. *v.* The Bank of North America, 4 Dall. 10; in which Chief Justice Ellsworth inquired: "How far is it intended to carry this argument? Will it be affirmed that, in every case to which the judicial power of the United States extends, the federal courts may exercise jurisdiction without the intervention of the legislature to distribute and regulate the power?" And Chase, justice, remarked: "If Congress has given the power to this court, we possess it, not otherwise; and, if Congress has not given the power to this or any other court, it still remains at the legislative disposal." *Est boni judicis ampliare jurisdictionem* was once quoted as a wise judicial maxim; how far this may accord with systems differently constituted from ours, and having their foundations in a large and almost undefinable discretion, it is, perhaps, unnecessary here to inquire; it seems, however, scarcely compatible with institutions under which the political and civil state is referred, almost exclusively, to legislative or express regulation.

Upon the views above given, I conclude that the judgment of the Circuit Court should be affirmed.

### ORDER.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Southern District of Mississippi, and was argued by counsel. On consideration whereof, It is now here ordered and adjudged by this court, that the judgment

of the said Circuit Court in this cause be, and the same is hereby reversed, with costs; and that this cause be, and the same is hereby remanded to the said Circuit Court, with directions to that court, to enter judgment in this case for the plaintiff in that court.

Mr. Justice STORY:

The decree of the Circuit Court in this case was reversed on the 30th of January, 1844, and the cause remanded, with directions to enter judgment for the plaintiff. On the 31st of January, *Jones*, for the plaintiff in error, suggested the death of Bland, and moved that the writ of error stand against the survivor, Humphreys, and that judgment be entered against him alone.

Mr. Justice STORY, in delivering the opinion of the court said, that if Bland died since the commencement of the term, the judgment might be entered against both defendants, on a day prior to the death of Bland, *nunc pro tunc*. If he died before the commencement of the term, then upon the suggestion of his death before the term being entered of record, the cause of action surviving, the judgment might be entered against the surviving defendant, Humphreys. There certainly is no objection in this case, under all the circumstances, to granting the application as asked for by the plaintiff's counsel; that is, to enter the suggestion of Bland's death upon the record, and then entering judgment against Humphreys alone, as the survivor; and it is accordingly so ordered by the court.

Alexander McNutt, Gov., &c., plaintiff in error,

*v.*

Richard J. Bland et al.

Mr. *Jones*, of counsel for the plaintiff in error, having suggested the death of Richard J. Bland, one of the co-defendants, since the last continuance of this cause, now here moved the court that his writ of error stand as against the surviving defendant. Whereupon this court not being now here sufficiently advised of and concerning what order to render in the premises, took time to consider.

*January* 31, 1844.

Alexander McNutt, Gov., &c., plaintiff in error,

*v.*

Richard J. Bland et al.

On consideration of the motion made in this case on a prior day of the present term of this court, to wit: on Wednesday, the 31st day of January, it is now here ordered by this court that the suggestion of Bland's death be entered on the record, and that then judg-

ment be entered against Humphreys alone as the survivor, and that the mandate of this court direct the Circuit Court to enter judgment for the plaintiff against Benjamin G. Humphreys alone as the survivor.                      *March 12th,* 1844.