UNITED STATES ex rel. MAXWELL v. BARRETT et al.

(Circuit Court, N. D. California.   January 30, 1905.)

No. 13,565.

1. FEDERAL COURTS—JURISDICTION.

The national courts inferior to the Supreme Court can exercise such jurisdiction and powers only as are expressly conferred on them by Congress.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, §§ 792–805.]

2. SAME—ACTION ON BOND OF GOVERNMENT CONTRACTOR—UNITED STATES AS USE PLAINTIFF.

An action on the bond of a contractor for government work brought under Act Aug. 13, 1894, c. 280, 28 Stat. 278 [U. S. Comp. St. 1901, p. 2523], in the name of the United States for the use of a person who furnished labor or materials in the prosecution of the work, is not one in which the United States is plaintiff or petitioner, within the meaning and intent of section 1 of the judiciary act of August 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508], but one in which it is merely a nominal party, and, in the absence of express provisions therefor in the statute giving the right of action, a federal court is without jurisdiction thereof unless the requisite diversity of citizenship and amount in controversy are affirmatively shown.

At Law.   On separate demurrers of defendants to complaint.

Wickliffe Matthews, for plaintiff.

Jesse W. Lilienthal, for defendant American Bonding & Trust Co.

Edwin L. Forster, for defendant Barrett.

HUNT, District Judge.   In May, 1901, the defendant Barrett, then and now a citizen of California, contracted with the United States for the construction by him of a post office building at Oakland, Cal.   To secure fulfillment of the covenants and conditions on his part, Barrett as principal, with the defendant company, a corporation of Maryland, as surety, executed a bond in the penal sum of $80,000, payable to the United States, the condition being:

"That whereas, the said Augustus E. Barrett has entered into a certain contract, hereunto attached, with L. J. Gage, Secretary of the Treasury, acting for and in behalf of the United States, bearing date the 9th day of May, A. D. 1901: Now, if the said defendant, Augustus E. Barrett, shall well and truly fulfill all the covenants and conditions of the said contract, and shall perform all the undertakings therein stipulated by him to be performed, and shall well and truly comply with and fulfill the conditions of, and perform all the work and furnish all the labor and materials required by any and all changes in or additions to, or omissions from said contract which may hereafter be made, and shall perform all the undertakings stipulated by him to be performed in any and all such changes in or additional thereto, notice thereof to the said surety being hereby waived, and shall promptly make payment to all persons supplying him labor or materials in the prosecution of the work contemplated by said contract, then this obligation to be void; otherwise to remain in full force and virtue."

Maxwell supplied Barrett with certain hardware at the price of $1,190, and with other hardware to the value of $586.23, in the prosecution of the work, and which was used in the building.   The debt being due and unpaid, Maxwell brought this suit demanding judgment against the defendants for the sum of $1,776.23.

The action is brought under the provisions of "An act for the protection of persons furnishing materials and labor for the construction of public works," approved August 13, 1894, c. 280, 28 Stat. 278 [U. S. Comp. St. 1901, p. 2523], and declaring that:

"Any person or persons entering into a formal contract with the United States for the construction of any public building, or the prosecution and completion of any public work, or for repairs upon any public building or public work, shall be required before commencing such work to execute the usual penal bond with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract; and any person or persons making application therefor and furnishing affidavit to the department under the direction of which the work is being or has been prosecuted, that labor or material for the prosecution of such work has been supplied by him or them and payment for which has not been made, shall be furnished with a certified copy of said contract and bond upon which said person or persons supplying such labor and materials shall have a right of action and shall be authorized to bring suit in the name of the United States for his or their use and benefit, against said contractor and sureties, and to prosecute the same to final judgment and execution: provided, that such action and its prosecution shall involve the United States in no expense.

"Sec. 2. Provided, that in such case the court in which the action is brought is authorized to require proper security for costs in case the judgment is for the defendant."

The defendants interposed separate demurrers. One of the grounds relied upon by the defendant American Bonding & Trust Company is that the court has no jurisdiction over the subject-matter of the action. Defendant Barrett's demurrer omits this ground.

1. The professed purpose of the act pursuant to which the bond involved in this suit was given, and by virtue of which this action was instituted, is to protect "persons furnishing materials and labor for the construction of public works." Inasmuch as persons supplying material or labor in the erection of public buildings or works cannot assert any lien or charge thereon for such materials or labor, Congress desired to afford them protection, and to that end provided in the body of the act that the usual penal bond for the protection of the government should contain the additional obligation that the contractor should promptly make payments to any and all persons supplying him with labor and materials in the prosecution of the work provided for in the contract the performance of which the bond secures, and that such person or persons shall have a right of action on the bond, and be authorized to bring suit in the name of the United States for his or their use and benefit against the contractor and sureties, and to prosecute the same to final judgment and execution. Express provision is made that such action and its prosecution shall involve the government in no expense, and the court in which such action is brought is authorized to require proper security for the costs in case judgment is rendered for the defendant. Manifestly there was no occasion for legislation on the subject so far as the United States is concerned. The only reason for enacting the law was to protect those who might furnish materials or labor to persons having contracts with the government. As was well stated by Judge

Thayer in United States, to Use of Anniston Pipe & Foundry Co., v. National Surety Co., 92 Fed. 549, 34 C. C. A. 526:

"There was no occasion for legislation on the subject to which the act relates, except for the protection of those who might furnish materials or labor to persons having contracts with the government. The bond which is provided for by the act was intended to perform a double function—in the first place, to secure to the government, as before, the faithful performance of all obligations which a contractor might assume towards it; and, in the second place, to protect third persons from whom the contractor obtained materials or labor. Viewed in its latter aspect, the bond, by virtue of the operation of the statute, contains an agreement between the obligors therein and such third parties that they shall be paid for whatever labor or materials they may supply to enable the principal in the bond to execute his contract with the United States. The two agreements which the bond contains, the one for the benefit of the government, and the one for the benefit of third persons, are as distinct as if they were contained in separate instruments, the government's name being used as obligee in the latter agreement merely as a matter of convenience."

It is to be noted that the act does not limit or prescribe the forum to which persons furnishing labor or material must resort to obtain the remedy provided.

2. Let us see who are the real plaintiffs in suits brought under this act. The United States has no control or direction of the actions. The United States cannot be charged with any costs or expense. The actions are brought and maintained for the sole use and benefit of the persons who have supplied materials and labor, and they, and they alone, are liable for costs if judgment passes for the defendant. The controversy is altogether between them and the defendants. Of whom could the court require security for costs? Not from the government of the United States, but from the persons bringing the suits. So, in this case, in the event of a judgment for Maxwell and the suing out of a writ of error by defendants, would the citation be served upon the United States? Would it not be required to be served on Maxwell only? And if judgment should be entered in favor of the defendants, would it be requisite or possible for the United States to be plaintiff in error? Let it be supposed that Maxwell in his own name had brought an action in a court of the state of California against Barrett to recover the price of materials furnished, and that judgment was rendered in favor of Barrett, and that thereafter Maxwell instituted a suit in the name of the United States for his use against Barrett and the surety to recover upon the bond for the price of the materials; would not the former judgment operate as an estoppel by way of res judicata? And does it not appear plain that the former judgment would not in any way affect the United States? Had Maxwell sued in his own name upon the bond in a state court, and no objection been made prior to judgment, would not a judgment in his favor be good? Is it not reasonable to assume that the court would in such a case decide that the omission to use the name of the United States was, at the worst, a mere formal irregularity, and should not affect either the jurisdiction of the court or the merits of the controversy?

If the act were silent in respect to the right of the person supplying materials or labor to bring suit upon the bond, it is likely that such

suit might be maintained, for the bond contains a covenant in such a person's favor. The objection that such plaintiff is not a party to the instrument on which the action is brought is not tenable when the bond is a deed poll containing a covenant in his favor. The generally accepted common-law rule is that only covenantees named in and sealing a specialty may maintain an action of covenant thereon, and the reason for inserting in the act the requirement that suit shall be brought by the person supplying labor and material, in the government's name, for his use and benefit, was probably to conform the practice to the rule generally supposed to be applicable to such cases. But the rule is not of universal application. The exceptions are quite as well established as the rule itself. Only those who have sealed a deed inter partes can maintain an action of covenant upon the deed. This is the rule except when abrogated or modified by statute. In respect to a deed poll, however, the opposite rule prevails. The bond referred to in the act, and here sued upon, is a deed poll; and a stranger to a deed poll may prosecute an action upon a broken covenant therein which was made for his benefit, provided he be in some manner designated. His name need not be used. He may be one of a class, as in Fellows v. Gilman, 4 Wend. 414, where plaintiff was held to be entitled to sue a constable and sureties upon his official bond for breach of a covenant therein, "to pay to each and every person such sum or sums of money as the said constable shall become liable for on account of any execution which shall be delivered to such constable for collection." Another familiar example of the rule as to the right of a stranger—that is, one who has not signed the specialty—to sue upon covenants in a deed poll appears in a case where there has been a breach of a covenant running to the grantee, "his heirs and assigns"; they may sue because they are sufficiently pointed out to disclose that the covenant was made for their benefit. It would not be difficult to give other illustrations. See Jones v. Thomas, 21 Grat. 96.

By the act the United States has consented to the use of its name by the real actor and plaintiff. It is reasonably clear to me that the United States is not a substantial party, but merely a modal, formal, and nominal party to a suit brought under the act by one who has supplied labor or materials to the contractor. Much might be said in favor of the contention that the provision touching the use of the name of the United States is permissive or directory, and not mandatory. Upon this question, however, I give no opinion, but assume the provision to be mandatory.

3. By adopting the Constitution the states and the people surrendered to the United States certain of their powers. The Constitution is a delegation of powers to the nation. Powers not so delegated nor prohibited to the states by the Constitution are reserved. All the federal judicial power is by the Constitution vested in one Supreme Court and such inferior courts as Congress may from time to time establish. Whatever is not expressly conceded to the United States is expressly reserved by the states. The opinion in United States v. Hudson, 7 Cranch, 32, 3 L. Ed. 259, contains the following succinct statement of the principle:

"The powers of the general government are made up of concessions from the several states; whatever is not expressly given to the former the latter expressly reserve. The judicial power of the United States is a constituent part of those concessions. That power is to be exercised by courts organized for the purpose, and brought into existence by an effort of the legislative power of the Union. Of all the courts which the United States may, under their general powers, constitute, one only, the Supreme Court, possesses jurisdiction derived immediately from the Constitution, and of which the legislative power cannot deprive it. All other courts created by the general government possess no jurisdiction but what is given them by the power that creates them, and can be vested with none but what the power ceded to the general government will authorize them to confer."

The judicial power of the federal courts, as Alexander Hamilton accurately observed in the Federalist, No. 83, is declared by the organic law to comprehend "certain cases particularly specified. The expression of these cases marks the precise limits beyond which the federal courts cannot extend their jurisdiction; because, the objects of their cognizance being enumerated, the specification would be nugatory if it did not exclude all ideas of more extensive authority."

Section 2 of article 3 of the Constitution enumerates the cases and controversies to which the national judicial power extends. It ordains that such power shall extend to certain matters, among which are "controversies to which the United States shall be a party." It is probably within the competency of Congress to confer upon the Circuit Court jurisdiction of controversies to which the United States is a mere formal and nominal party. Perhaps the language quoted is sufficiently comprehensive in that regard, though it would seem that the main (if not the sole) purpose was to concede and surrender judicial power where the government is a real or interested party— namely, where the United States is in fact a party to controversies— and not to those cases involving controversies in which the United States has no concern. McNutt v. Bland, 2 How. 9, 11 L. Ed. 159.

4. But if it be granted that the language quoted must be construed as being sufficiently comprehensive in that regard, so that the national judicial power includes all controversies to which the United States is a party, the next inquiry is whether Congress has conferred upon the Circuit Courts the power to take cognizance of controversies to which the United States is but a nominal party. Has Congress partitioned out or allotted to Circuit Courts power to entertain controversies in which the United States has no interest and over which it exercises no control? Is the United States plaintiff in the controversy before the court, within the meaning and intent of the act of August 13, 1888, c. 866, 25 Stat. 433, 1 Rev. St. Supp. 1878, p. 611 [U. S. Comp. St. 1901, p. 508], the first section of which provides that the Circuit Courts shall have original cognizance of any controversy in which the United States is plaintiff or petitioner, regardless of the amount in dispute? U. S. v. Sayward, 160 U. S. 493, 16 Sup. Ct. 371, 40 L. Ed. 508.

National courts inferior to the Supreme Court are clothed with such powers as Congress has conferred upon them. The doctrine, negatively expressed, is that such courts have no other or greater jurisdiction than that which Congress apportions to them. The potential power ceded to the United States by section 2 of article 3 of

the Constitution may be called into exercise by Congress, which possesses the right to establish inferior courts, and to partition among them all or any part of the judicial powers not vested in the Supreme Court. Courts created by Congress can exercise such powers only as are expressly conferred upon them. They cannot take jurisdiction by mere implication. They have no jurisdiction by intendment. Harrison v. Hadley, 2 Dill. 229, Fed. Cas. No. 6,137; Ex parte Cabrera, 1 Wash. C. C. 232, Fed. Cas. No. 2,278; Bank v. Roberts, 4 Conn. 323, Fed. Cas. No. 934; U. S. v. Alberty, Hempst. 444, Fed. Cas. No. 14,426. In Turner v. Bank, 4 Dall. 8, 1 L. Ed. 718, the court said:

"A Circuit Court, however, is of limited jurisdiction, and has cognizance, not of cases generally, but only of a few specially circumstanced, amounting to a small proportion of the cases, which an unlimited jurisdiction would embrace. And the fair presumption is not, as with regard to a court of general jurisdiction, that a cause is within its jurisdiction unless the contrary appears, but rather that a cause is without its jurisdiction till the contrary appears."

Congress may withhold from the courts of its creation jurisdiction of controversies to which the United States is a nominal party. Unless such power is conferred it is withheld, for statutory courts can have no jurisdiction but such as the statute confers. Sheldon v. Hill, 8 How. 441, 12 L. Ed. 1147.

Circuit Courts have cognizance of any controversy in which the United States is plaintiff. In the case at bar the United States is not, in the proper sense or within the intent of Congress, plaintiff in the controversy presented, for it is without concern or interest therein. Maxwell himself recognized this fact when in the title of the case he designated himself as the plaintiff, when he described himself in the body of the complaint as plaintiff, and when, in the verification, he swore that he was plaintiff. I think Congress intended to confer a jurisdiction over suits and actions in which are controversies affecting the United States as plaintiff, and in which the government of the United States is more than a mere figurehead. It is firmly established that "for purposes of jurisdiction in the federal courts regard is had to the real rather than the nominal party." Stewart v. Ry. Co., 168 U. S. 445, 18 Sup. Ct. 105, 42 L. Ed. 537. Section 2 of article 3 of the Constitution and the judiciary acts of Congress "look to things, not names; to the actors in controversies and suits, not to the mere forms or inactive instruments used in conducting them, in virtue of some positive law"—is the declaration of the Supreme Court in McNutt v. Bland, 2 How. 9, 11 L. Ed. 159, cited supra, which was approved and applied in Maryland, for Use of Markley, v. Baldwin, 112 U. S. 490, 5 Sup. Ct. 278, 28 L. Ed. 822. The United States is "a mere conduit" through which the law affords a remedy. Id. It is a modal party to this action, but is not a real or substantial plaintiff in the controversy out of which the action arises.

I am aware that the learned judge who delivered the opinion in United States v. Churchyard (C. C.) 132 Fed. 83, is of opinion that in actions of this kind Circuit Courts have jurisdiction; but I think he failed to give effect to the principle that no case is within the

jurisdiction of federal courts (inferior to the Supreme Court) unless Congress has unmistakably conferred it. Support for the conclusion that this court is without jurisdiction is found in the able opinions of Judges Baker and Evans, delivered in United States, to Use of Lumber Co., v. Henderlong (C. C.) 102 Fed. 2, and United States, to Use of Stone Co., v. Sheridan (C. C.) 119 Fed. 236.

Barrett's omission to challenge the jurisdiction of this court over the subject-matter is not of moment, for the court must of its own motion notice such want of power.

The demurrer of the American Bonding & Trust Company of Baltimore is sustained, and an order will be made dismissing the action for want of jurisdiction of the subject-matter.