Mr. Chief Justice Marshall
delivered' the opinion of the Court.-—
Some time-in the year 1817, Juan Madrazo, a Spaniard, residing in. the Island of Cuba, engaged in- the slave trade, fitted out a vessel for the coast of Africa, which p. ocured a cargo of Africans; and on its return, in the autumn df 1817, was captured by. a privateer sail, under the flag of one of the gov - ernments of Spanish Átnerica, and carried into Amelia Island ; where the vessel and cargo were condemned by a tribunal, es-' tablished by Áury, the authority of which has not .heén acknowledged in this-country. The Africans were purchased by. William Bpwen, and were conducted into the Creek nation;' *119 within the limits of the state of Georgia, where they wer'é seized by M’Queen MTntosh, a revenue officer,' at Darien,, in Georgia, early in January .1818, under the Act of- .1807-; which prohibits, the importation or bringing into the United States, of any negro, mulatto, or person of colour. This Act annuls the title of the importer, or any person, claiming under him, to such negro, mulatto,. or person of colour, and declares that such persejns “ shall remain subject-to any regulation, not contravening the provisions of this Act, which the legislatures of the several states or territories, at any time hereafter, may make for disposing of such negro, mulatto, or person of co-lour.”
In December 1817, the legislature of Georgia-passed an Act, which ..empowered the governor to appoint some fit and’ proper, person to proceed - to all such ports and places within this state, as have or may have, or may hereafter hold any ne-groes, mulattoes, or., persons of colour, as have been, or may hereafter be seized, or condemned under the above recited- Act of Congress, and who may be subject to the control of this state; and the person so apppointed shall have full power-and authority to receive all such negroes, mulattoes, or persons of colour, and to convey the same to Milled geville, and place - them under the immediate control of the executive of this state:
The second section authorizes the'governor to sell such ne-. groes, mulattoes, or persons of colour, in such manner as he may think most advantageous to the state.
•The third directs that they may be delivered up to the Colonization Society, on certain conditions therein'expressed ¿.provided the application be made before the sale.
Under this Act, the Africans brought in by William Bowen, were delivered' up to the governor of Georgia,- who sold the greater number of them, and paid , the'proceeds, amounting to 38,000. dollars, into, the treasury’of the state. The’ Colonization Society applied for those remaining unsold, amounting to rather more than twenty, and Offered to comply with the conditions prescribed in the Act of December 1817.
In May, 1820, the governor of Georgia filed án information in the District Court of Georgia, stating the violation of. the Act of Congress,' that the Africans were placed under the immediate control, of the executive of the state, where they awaited the decree of the Court, He states • the application made • on the part of the Colonization Society, with, which he is.desirous of complying, as soon as he shall be authorized to do, so by the decree of the Court.
In November *1820, 'William Bowen filed his claim to the said Africans, alleging that they were his property — that they *120 had not been brought into the United States, in violation oi' the Act of Congress; but w.ére seized while passing through the Creek .nation, oii. their way. to West Florida.
■ In February 1821, Juan Madrazo filed his libel, alleging that the Africans were- his property — that on the return voyage from Africa, they were captured by the privateer Successor, commanded • by an American, and fitted out in an American port — that the'vessel and-cargo were carried into Amelia Isl- and, and condemned by an unauthorized tribunal; after which they, weré brought by the purchaser into- the Creek nation, where théy were, seized by an officer of the United States— brought into the limits of the district of Georgia, and delivered over to the government of that state, in. pursuance • of an Act of the General Assembly, carrying into,, effect an Act- of Congress, in that case made and provided. That a part of the slaves wefe sold, and the proceeds, amounting to 38,000 dollars, or more, paid into the treasury of the state; and that the residue, amounting to twenty-seven or thirty, remain Under the control of the governor."
The libel denies that the laws of the United States have been violated, and prays that, admiralty process may issue' to take .possession of the slaves remaining under the control of the governor of Georgia; and that the governor and all others concerned, should be cited' to show cause why the said slaves should not be restored,to J[uan Madrazo, and.the proceeds of those which had been sold, paid over to him.
Upon this libel a inonition was, issued to the. governor of Georgia, who, appeared and file,da claim on behalf of the state; in which he says, that the slaves were brought into the •state, in violation of the Act of Congress, and that they were taken into the possession of the executive of the state, in pursuance of the Act of the state legislature,’ enacted to carry the Act of Congress into effeGt.' That a number of the said slaves have been sold, and the proceeds paid info the treasury, where they have, become á part of the’funds of. the state, not subject to his control, or to the control of the treasurer- .That the residue of the said slaves, who remain unsold, have been demanded under the law, by the Colonization Society.
Process was also issued against, the Africans, biitwas not executed.-. The- two causes' cáme on .together, and the District Court'dismissed the claim of Bowen,, and also 'dismissed the libel of Madrazo', and directed that the slaves remaining unsold should be delivered by the. ma’rshal to; the governor of .the state, and that the proceeds of .those -sold, should remain in the treasury.-
' Both Bowen and-Madrazo appealed to the'Circuit Court. •
At" the hearing in the Circuit Courtvt-he sentence, dismissing *121 the claim of Bówen, was affirmed. That dismissing the libel of Madrazo was reversed, and a decree was made, that the slaves remaining unsold, should be delivered to:him; :on his giving security to 'transport them out of the United States — and farther, that the proceeds of those which were sold, should be paid to him. From this decree, the govérnor of Georgia and William Bowen, have appealed to this Court.
A questipn, preliminarily to the examination of the title to the Africans, which were the subject of these suits, and to the proceeds of those which were sold, has been made- by the counsel for the state of Georgia.. He contends, that this is essentially, and in form, a suit against the state of Georgia; and therefore was not cognizable in the District Court of the United States.
The process which' issued from the Court of Admiralty not having been executed, the res was never in possession of that Court. The libel of Madrazo therefore, was not a proceeding against the thing, but a proceeding against the person for (the thing. This appeal carried the cause into the Circuit Court, as it existed in the District Court, when the decree was pronounced. It was a libel, demanding, personally, from .'the governor of Georgia, the Africans remaining unsold, and the. proceeds of those that were sold, which proceeds, had been paid into the treasury.
Pending this appeal, the governor filed a paper in the nature of a stipulation, consenting to hold the Africans claimed by the libel of Madrazo, subject to the decree of the Circuit Court'; if it should be determined'that the claim in the Circuit Court had priority to sundry executions, levied on them by the sheriff of Baldwin county. Had this paper, been filed in the District Court, it would have been a substitute for the Africans; themselves, and would, according to the course of the admiralty,have enabled that Court to proceed in like manner as if its process had been served upon them. The libel would then have been in ream. Could this paper, when filed in the Circuit Court, produce the' same effect on the cause ?
We think it could not.'
. The paper in nature of a stipulation, is. a. mere, substitute for the process of the:Court; and cannot,.we think, be resorted to,where. the process itself could not be issued according to. law. The procéss could not issue legally in this case, because it would be tfie exercise of original jurisdiction in admiralty; which the Circuit Court does not possess.
This cause therefore remained in its character a libel against the person of the governor of Georgia, for the Africans in his possession as governor, and for the proceeds, ih the treasury, of *122 those which had1 been sold. Could theJDistrict Court exercise jurisdiction in such a cause.?
Previous to the adoption of the 11th amendment to the Constitution, it was determined that the judicial power of 'the’United States, extended to a .case in which a state was a party defendant. This principle was settled in the case of. Chisholm vs. Georgia, 2. Dal. 419. In that case, the slate appears to have been-nominally a party on-the record. In the case of Hollingsworth vs. Virginia, also, in 3 Dal. 378, the state was nominally a party on the record. In the case of-Georgia vs. Brailsford, 2 Dal. 402, the bill was. filed by his excellency Ed ward Telfair, Esq; Governor and Commander in Chief, in and over the state of- Georgia, in behalf of the said state.- No objection was made to the jurisdiction of the Court, and the case was considered as one in which, the Supreme Court had original jurisdiction, because a state was a party. In the case of New York vs. Connecticut, 4 Dal. 3, both the states were nominally parties on the record. Np question was raised in any of the cases respecting the style in which a state should sue or be sued; and the. presumption is that the actions were admitted to be properly brought. In' the case of Georgia vs. Brailsford, the action is not in the name of -the state, but it is brought by its chief magistrate in behalf of- the state. The bill itself avows,, that the state is the actor, by its-governor^
There is, however, no case in which a state has been sued without making it nominally a defendant.
Fowler et al. vs. Lindsey et al. 3 Dal. 411, was.acase in which an -attempt was made- to restrain proceedings in. a cause' depending in a Circuit Goui’t; on the ¿negation that a controversy respecting soil and jurisdiction-of two states, had occurred in it.
• The Court determined-that a state, not being a party on the record, nor directly interested, the Circuit Court ought to proceed in it. In the United States vs. Peters, the Court laid down the principle, that although the claims of a state may be ultimately affected by the decision-of-a cause, .yet if the state be not necessarily a defendant, the Counts of -the United States are bound to exercise jurisdiction. .
In the case of Osbourne vs. the Bank of the United States, 9 Wheat. 738, this -question was brought more directly before the Court.’ It was’argued with equaLzeal and talent, and decided on great deliberation. In that case, the auditor and treasurer of .the state were defendants, and the'title of the state itself to the subject in contest .was asserted. "In that case, the Court said, “ It may,' We think, .be laid down as a rule, which admits of no exception, that in all cases where jurisdiction depends on.the party, it is the party named in the .record.” The Court added. *123 “ the state not being a party on the record, and the Court having jurisdiction over those who are-parties on the record, the true question is not one of jurisdiction, but whether, in the exercise of its jurisdiction, the Court ought to make a decree against the defendants; whether they are to be considered as having a real- interest^' or as being only nominal parties.1”
The information of the governor of Georgia professes to be filed oh behalf of the state, and is in the.language, of the bill, filed by the governor of Georgia on behalf of the state, against Brailsford,
. -If, therefore, the state was properly considered as á -party in that case, it may be considered as a party-in this.
The libel of Madvazo, alleges that the slaves which he claims, “ were' delivered over to the government of the state of Georgia, pursuant to an Act of the General Assembly of the said staté, carrying into effect an Act of Congress of the United States, in that case made and provided; a part of the said slaves sold, as permitted by said Act of Congress, and' as directed by'an Act of the General Assembly of the said State; and the-proceeds paid into the treasury of the said state, amounting to thirty-eight thousand dollars, or .more»*’
The governor appears, and files a claim-on behalf of the state, to the slaves remaining unsold,-and to "the proceeds of those which are sold. He states the slaves to be in-possession of the executive, under the Act of the Legislature of Georgia, .made to give effect to the Act of'Congress oh, the;siibject -of negroes, mulattoes or people of colour,, brought illegally into the United States; and the proceeds of those unsold to have been paid in the treasury, and to be no.longer under liis'control. ,
The case made, inboth the libel and claim, exhibits a demand for- money actually in the treasury of -the state, mixed .up with its general fundsj. and for slavps in possession of the government. It is not alleged, nor is it the fact, that this-money has been brought into the treasury, or these Africans into the possession of the executive, by any violation of an Act of Congress. The. possession has been acquired, By means which it was law-, •ful to employ.
The claim upon the governor, is as-'a governor; he is sued, not by his name, but by his title. The demand made upon him, is not made personally, but-officially.
The decree'is pronounced not -against- the person, but-the officer,- and appeared to have been pronounced against the successor of-the original defendant; as the appeal bond was executed b'y a-different governor from him -who filed the information. In such a case;- where the chief magistrate of- a state is sued, not by his name, but by his style of office, and the claim made upon him is entirely in his official- character, we think the *124 may as a party on the • record. If the state is not a party, there is no party against whom a decree can be- made.' No person in his natural capacity is brought before the Court as defendant This not being a proceeding against the thing, buit against the person, a person capable of appearing as defendant, against whom a decree can be pronounced, must be a party to the cause before a decree can be regularly pronounced.
But were it to be. admitted, that the governor could be considered as a defendant in his personal character, no case is made which justifies a decree against him personally. He has acted in obedience to' a law of the state, made for the purpose of giving effect to an Act of Congress; and has done nothing in violation of any law of the United States.
The decree is not to be considered as made in a case in which the governor was a defendant, in his personal character; nor could a decree against him, in that character, be supported.
The decree cannot be sustained as against the state, because, if the 11th amendment to the Constitution, does not extend to proceedings in admiralty, it was a case for the original jurisdiction of the Supreme Court. It cannot be sustained as a suit, prosecuted not against the state-but against the thing; because the thing was not in.possession of the District Court.
We aré therefore of opinion, that there is error in so much of the depree of the Circuit Court, as directs that the said slaves libelled by JuanMadrazb,and the issue of the females now in the custody of the government of the state of Georgia, or the agent or agents of the said state, be restored to the said Ma-drazo, as the legal proprietor thereof, and that the proceeds of those slaves, who were sold by order of the governor or the said state,“be paid,to the sáid Juan-Madrazo; and that the same ought to be reversed; but that there is no error in so much of the said decree as dismisses the' information of the governor of Georgia, and tlic claim of William Bowen.