**John Henry ADAMS, Plaintiff,**

v.

**Louie L. WAINWRIGHT, etc., et al., Defendants.**

**TCA 74–169.**

United States District Court,
N. D. Florida, Tallahassee Division.

April 15, 1981.

---

Ronald D. Combs, Florida Institutional Legal Services, Inc., Gainesville, Fla., for plaintiff.

Kent A. Zaiser, Asst. Atty. Gen., Civil Division, Tallahassee, Fla., for defendants.

## ORDER

WILLIAM STAFFORD, Chief Judge.

This case came before the court for a trial without a jury. The gravamen of plaintiff's complaint is that he was deprived of procedural due process as a result of his placement in administrative confinement and close management while a prisoner at the Florida State Prison in Starke, Florida.[1] In accordance with Fed.R.Civ.P. 52(a), the court makes the following findings of fact

and conclusions of law necessary for the resolution of this action.

### Findings of Fact

Plaintiff John Henry Adams was, at all times relevant to this case, an inmate at Florida State Prison. Defendants, sued in their individual and official capacities, are Louie Wainwright, Director of the Florida Division of Corrections, George Fortner, Superintendent of Florida State Prison during the event complained of by plaintiff, and Milton Hicks, Chief Correctional Officer at Florida State Prison throughout the period of plaintiff's alleged constitutional deprivations.[2]

Inmates at Florida State Prison are classified, and confined, in several general categories: open population, disciplinary confinement, close management and administrative confinement.[3] Administrative confinement and close management are not disciplinary forms of incarceration.

An inmate is placed in administrative confinement only after the following procedures have been observed:

(a) The Supervising officer must cause a Report of Administrative Confinement (DC–2) to be completed and the inmate must be informed of the reason for his placement in Administrative Confinement. If the inmate wishes to make a statement, such statement shall be recorded on the DC–2 form. Written, complete details and the reason(s) as to why the inmate was placed in this status must also be given. (this report must be completed, even though a Disciplinary Report, DC–1, is prepared.) Form DC–2 should be completed in one copy for major institutions and two copies for road

---

1. Plaintiff raised various other grounds in his complaint and amended complaint, including cruel and unusual punishment and loss of personal property. However, at trial, counsel for all parties agreed that this case is now one seeking only declaratory and equitable relief as well as damages for alleged deprivation of procedural due process protected by the Fourteenth Amendment to the United States Constitution.

2. Counsel notified the court at trial that, pursuant to stipulation, defendant Wilbur Rogers can be, and is, dismissed from this case.

3. It should be noted that these inmate classifications may not exist at Florida State Prison today. However, the evidence in this case dealt with the classification system in 1974. Accordingly, this court's order is addressed to that system rather than to any other system which may be in effect at this time.

prisons, vocational centers and community correctional centers.

(b) This action will be reviewed by the Classification Team, approved by the Superintendent, and the form then placed in the inmate file at the institution.

(c) Inmates in administrative confinement will be reviewed by the Classification Team for possible release at regular intervals.

Florida Division of Corrections Inmate Treatment Directive Number 5, issued October 16, 1974, ¶ 5.12.[4]

However, that same directive notes that [n]othing in this directive should be construed so as to prevent the institution's employee from placing in immediate administrative confinement any inmate who poses an immediate threat of violence or disruption to himself, other inmates, Division employees, or the institution generally.

However, the procedure under number (1) above should be completed at the earliest practical time.

Florida Division of Corrections Inmate Treatment Directive Number 5, issued October 16, 1974, ¶ 5.12.

Close management, a classification unique to the Florida State Prison, is similar to administrative confinement in the conditions imposed. Close management confinement is given to a prisoner by a five-member Close Management Assignment Team (CMAT) which includes a staff manager, the assistant prison superintendent and a staff psychologist. The inmate does not appear in front of the CMAT when it places an inmate in such confinement. Similarly, the inmate does not appear in front of the CMAT during its periodic review of the status of offenders in close management. Behavior which, while not sufficient for disciplinary action, renders the inmate unfit for living in the general population, usually precipitates close management. An inmate can be removed from close management only by a vote of his classification team rather than on the authority of his correctional officer.

Among the privileges enjoyed by inmates in the open population is access to the dining room, canteen, gym, and work assignments. In contrast, prisoners in administrative confinement and close management are confined in a single cell throughout the entire day except for taking showers or receiving medical aid. Visitors are permitted. Inmates so confined eat the same food as those in the open population, though it is catered to them. Administrative confinement is for persons who cannot function in the general population and are there:

(1) awaiting disciplinary action

(2) for investigation

(3) for protection

(4) at the inmate's own request for good and valid reasons

(5) pending trial for a crime in the institution

(6) death row cases

(7) custody risks who cannot be held in the regular inmate population

(8) inmates who after disciplinary confinement appear to the Classification Team to be potentially assaultive or disruptive and who still cannot reasonably and safely be returned to the regular inmate population.

Inmate Treatment Directive Number 5, ¶ 5.12(B) (appended to both plaintiff's and defendants' post-trial memoranda of law filed June 16, 1980 and July 17, 1980, respectively). Administrative confinement is usually of limited duration pending a decision upon whether disciplinary confinement, close management or a return to the general population is appropriate. However, those inmates who cannot and should not be placed in disciplinary confinement or close management, but nevertheless should not be returned to the general population, may remain in administrative confinement indefinitely.

In disciplinary confinement the inmate has none of the privileges enjoyed by the

---

4. Both plaintiff and defendants agree that this Inmate Treatment Directive, while not introduced into evidence at the trial, governed both parties during the incident complained of.

general population. He has no access to reading materials except for some legal materials. He has a different diet than other inmates which, to an extent, is dependent on the disciplinary action taken against him. He has no personal property in confinement with him and is removed from his single cell only for medical attention. An inmate in disciplinary confinement cannot have visitors. Disciplinary confinement is for a definite period of time. An inmate can be placed in disciplinary confinement only after a series of procedural steps.[5]

On September 8, 1974, officials at the Florida State Prison learned from inmates and staff that the inmates in administrative confinement planned a hunger strike and a takeover of the "S" Wing of the prison. To support that strike, prisoners in the general population apparently also planned a hunger strike. On September 17, 1974, Prison Inspector J. C. Combs was directed by Prison Superintendent Fortner to conduct an investigation into this situation. Mr. Combs submitted his preliminary report to Superintendent Fortner on September 20. That report identified plaintiff Adams as one of the inmates in the general population who was responsible for organizing the hunger strike among that segment of the inmates.[6] Hicks interviewed Adams regarding the allegations and ordered plaintiff placed in administrative confinement on September 20, 1974, pending a hearing with the CMAT. D. A. Thomas, chairman of the Classification Team at that time, signed the report of Administrative Segregation (DC–2), which was approved by Superintendent Fortner. (See plaintiff's Exhibit 2). On September 24, 1974, 57 inmates in confinement[7]

refused to return their eating utensils after the noon meal. During recovery procedures five inmates resisted with vio-

lence which caused four officers to be injured. Inmate Adams did not actively participate in that demonstration.

See Memorandum from T. A. Dowling to Annabel P. Mitchell (defendants' Exhibit 2).

This action was filed October 18, 1974. On October 23, 1974, plaintiff's case was reviewed by the CMAT, after a recommendation of placement in close management by the Classification Team. Adams was not present at this hearing. The five members of the CMAT determined that Adams should be assigned to close management supervision. (See plaintiff's Exhibit 3). Adams remained in close management from October 30, 1974 to August of 1975.

### Conclusions of Law

Plaintiff has no federally created liberty interest in a particular form of confinement so long as the imprisonment does not otherwise violate the United States Constitution. *See Montayne v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976); *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Nevertheless, the state can create a liberty interest sufficient to invoke the protection of due process. *See Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The issue before the court, therefore, is whether Adams had a liberty interest created by the State of Florida's prison regulations that entitle him to procedural due process.[8]

First, to support his contention that he had a liberty interest, plaintiff points to Paragraph XV, contained in Attachment No. 1 to Inmate Treatment Directive No. 8. It is entitled "Format of Reclassification and Progress Report" and apparently serves as an example of the format of such a report. The paragraph at p. 11 reads:

---

5. See ¶ 5.07 of Inmate Treatment Directive Number 5.

6. The evidence in this case also reveals that Adams had been involved in a hunger strike from October 15 through 19, 1973 which had resulted in his administrative confinement for approximately 8 months.

7. Testimony was unclear as to which type of confinement these inmates were in.

8. The fact that plaintiff's alleged liberty interest is a product of state regulations rather than statutory law is of no moment. *See Meachum v. Fano,* 427 U.S. at 229, 96 S.Ct. at 2540.

*Team Decisions and Recommendations:*

Decisions made by the team shall revolve from interaction of team members and a thorough review of the case. Recommended goals set for the inmate to accomplish will be thoroughly discussed with him. Each inmate shall be scheduled for personal appearances before the Classification Team when a Reclassification and Progress Report is being processed.

There was no evidence at trial that defendants processed a Reclassification and Progress Report in regards to plaintiff's placement in administrative confinement and close management. Plaintiff contends that his case should have been before the Classification Committee or Team for reclassification since a significant change in his program was made. Consequently, a Reclassification and Progress Report would be required by Sections 8.01 and 8.02 on pp. 1–2 of Inmate Treatment Directive No. 8. According to plaintiff, the foregoing procedural provisions establish a liberty interest.

Second, plaintiff urges that a liberty interest is established by Inmate Treatment Directive No. 5, page 13 at ¶ 5.12(B) by the list of eight "Reasons for Placing Inmates in Administrative Confinement," cited earlier in this order.

■ The "analysis as to liberty parallels the accepted due process analysis as to property." *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). "The touchstone of due process is protection of the individual against arbitrary action of government." *Id.* at 558, 94 S.Ct. at 2975 citing *Dent v. West Virginia*, 129 U.S. 114, 123, 9 S.Ct. 231, 233, 32 L.Ed. 623 (1889). Once the state imposes limitations on its own discretion and requires that a specific standard prevail for decision making, it creates a liberty interest. This is true "regardless of whether the limits stem from statute, rule or regulation." *Meachum v. Fano*, 427 U.S. 215, 226, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976); *Montayne v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976).

■ Plaintiff's first contention that the format requirements for reclassification and progress reports (which call for the personal appearance of the prisoner before the team when a report is being processed) establishes a liberty interest is not persuasive. When a statute or rule merely directs officials to follow certain procedures in making a decision but does not substantively restrict their authority to make that decision, it does not establish a liberty interest. *Cofone v. Manson*, 594 F.2d 934 (2d Cir. 1979); *Montayne*, 427 U.S. at 243, 96 S.Ct. at 2547.

However, once the state substantively conditions its authority to act, as for good cause only, it gives rise to a legitimate expectation on the part of the prisoner that he will not be moved for whatever reason or no reason at all. As stated by the United States Supreme Court in *Wolff v. McDonnell*, 418 U.S. at 557, 94 S.Ct. at 2975:

> But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

Inmate Treatment Directive No. 2 which lists categories of prisoners who qualify for transfer into administrative confinement gives rise to a liberty interest. The list includes some objective classes such as death row cases and those awaiting trial for a crime in the institution, but also subjective categories such as custody risks. Section 5.12(B) of Inmate Treatment Directive No. 5 creates a justifiable expectation in an inmate that he will not be placed in administrative confinement absent a finding that he falls into one of the enumerated categories. The inmate's expectation has its genesis in the state's policy directive and is sufficiently substantial to give rise to a protected liberty interest.

■ Once it is established that plaintiff had a liberty interest, the relevant inquiry is whether the procedures utilized by the state comport with Fourteenth Amendment minimum due process requirements. The fundamental requirement of due process is "the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914). The purpose of this requirement is not only to ensure the abstract concept of fair play, but also to prevent the arbitrary deprivation of a liberty interest. *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). The opportunity to be heard should be granted at a meaningful time and in a manner which is appropriate to the nature of the situation. *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1950). It "must be tailored to the capacities and circumstances of those who are to be heard." *Goldberg v. Kelly*, 397 U.S. 254, 268–9, 90 S.Ct. 1011, 1020–21, 25 L.Ed.2d 287 (1970). Plaintiff was placed in administrative confinement "pending a hearing with the Assignment Team" since he was implicated as an instigator of a food strike and due to his "continued agitation and disregard for institutional policy." (*See* plaintiff's Exhibit No. 2). It is unclear into which of the categories listed in ¶ 5.12(B), Inmate Treatment Directive No. 5, plaintiff fit. Plaintiff received no hearing at all, either before his transfers to administrative confinement and close management or afterwards. Defendants failed to afford plaintiff minimum due process of law.

In the pro se complaint, plaintiff sought damages against defendants as well as declaratory and injunctive relief. The Declaratory Judgments Act, 28 U.S.C. § 2201, provides that a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." In this case, plaintiff seeks a declaration that defendants violated his constitutional rights. Plaintiff is entitled to a judgment making that declaration since defendants placed plaintiff in administrative confinement without affording him procedural due process of law.

■ Plaintiff seeks an injunction prohibiting retaliation against him for filing this suit. There has been no evidence that, at any time in this case, defendants have sought to retaliate against plaintiff for prosecution. Consequently, specific relief on this point is inappropriate at this time.

■ The plaintiff cannot collect damages from the defendants in their official capacities since they are immune from dollar damage liability under the Eleventh Amendment to the United States Constitution. The real party in interest when these defendants are sued in their official capacities is the State of Florida since dollar damages would be paid from the public funds of the state treasury. *Scheuer v. Rhodes*, 416 U.S. 232, 237–38, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Governor of Georgia v. Madrazo*, 26 U.S. (1 Pet.) 110, 7 L.Ed. 73 (1828).

■ In order to collect dollar damages from defendants in their individual capacities, plaintiff must pierce their qualified immunity. *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). An official loses his qualified immunity only if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate constitutional rights or if it was his malicious intent to cause a deprivation of the plaintiff's constitutional rights. *Dilmore v. Stubbs*, 636 F.2d 966 at 969 (5th Cir. 1981); *Bogard v. Cook*, 586 F.2d 399 (5th Cir. 1978); *Wood v. Strickland, supra.*

■ There was no evidence introduced at trial that defendants acted with any malicious intent to deprive plaintiff of his rights. In addition, at the time of these officials' actions, there were no "clearly established judicial decisions" making their actions unconstitutional. *Dilmore v. Stubbs, supra* at 969, citing *Bogard v. Cook*, 586 F.2d at 411. These officials did not act with such disregard of the plaintiff's clearly

established constitutional rights that their actions cannot reasonably be characterized as being in good faith. *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) quoting *Wood v. Strickland*, 420 U.S. at 322, 95 S.Ct. at 1000. Defendants are immune from damage recovery. Plaintiff is currently in open population which renders moot specific injunctive relief in his case. *See Franklin v. Fortner*, 541 F.2d 494 (5th Cir. 1976); *Preiser v. Newkirk*, 422 U.S. 395, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975).

Finally, plaintiff is entitled to injunctive relief providing a prospective remedy for his constitutional violations. *See Scheuer v. Rhodes*, 416 U.S. 232, 237, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Plaintiff may obtain this relief without first exhausting state administrative remedies.[9] *See Patsy v. Florida International University*, 634 F.2d 900 (5th Cir. 1981). "Once a constitutional violation is found, a federal court is required to tailor 'the scope of the remedy' to fit 'the nature and extent of the constitutional violation.'" *Hills v. Gautreaux*, 425 U.S. 284, 293–94, 96 S.Ct. 1538, 1544–45, 47 L.Ed.2d 792 (1976), quoting *Milliken v. Bradley*, 418 U.S. 717, 744, 94 S.Ct. 3112, 3126, 41 L.Ed.2d 1069 (1974).

It is this court's holding that plaintiff's constitutional right to due process was violated by the procedures then utilized by defendants, in their official capacities, to transfer him to administrative confinement. In order to enable this court to fashion an appropriate remedy, the clerk is directed to schedule a hearing to determine if current procedures for placement in administrative confinement meet minimum constitutional requirements. The parties may submit memoranda no later than 10 days prior to the hearing.

DONE AND ORDERED this 15th day of April, 1981.

---

**9.** The Court stated in *Patsy*, "courts do not require exhaustion when the question of the adequacy of the administrative remedy is for all practical purposes coextensive with the merits of the plaintiff's claim, such as when, for example, the plaintiff contends that the administrative system itself is unlawful or unconstitutional in form or application." *Patsy v. Florida International University*, 634 F.2d 900 at 904 (5th Cir. 1981). Such is the situation in this case.