**Lyndalee SCHWEITZER and Georgia DeKoker, Plaintiffs,**

**v.**

**UNIVERSITY OF TEXAS HEALTH CENTER AT TYLER, George A. Hurst, M.D., David S. Turman, Dennis P. Kilday, and Larry J. Rayford, Defendants.**

Civ. A. No. TY–86–131–CA.

United States District Court,
E.D. Texas,
Tyler Division.

April 14, 1988.

**280**

Larry Daves, Daves & Levy, Tyler, Tex., for plaintiffs.

Priscilla Champion, Asst. Atty. Gen., Kevin T. O'Hanlon, Asst. U.S. Atty., Austin, Tex., for defendants.

### ORDER

JUSTICE, Chief Judge.

#### I. INTRODUCTION.

The defendants' December 8, 1987 motion for dismissal, or, in the alternative, for summary judgment, attacks all of the claims that the plaintiffs make. The motion shall be granted in small part, and the remainder shall be denied. However, it serves to sharpen many of the issues before the court. This order addresses the various grounds advanced by the defendants for pretrial disposition.

#### II. DEKOKER'S § 1983 AND § 1985 CAUSES OF ACTION.

One of the plaintiffs, Georgia DeKoker, sues on the basis of a number of civil rights causes of action. Most grow out of the circumstances surrounding her termination from employment at the University of Texas Health Center at Tyler. She alleges that the four individual defendants, George A. Hurst, M.D., David S. Turman, Dennis P. Kilday, and Larry J. Rayford, discharged her in retaliation for the proper exercise of her free speech and associational rights under the First Amendment. She also contends that the manner in which they handled her termination deprived her of her due process rights under the Fifth and Fourteenth Amendments. Moreover, she accuses them of entering into a conspiracy to engage in this wrongful conduct. Therefore, she claims that they violated two provisions of the Civil Rights Act of 1871, 42 U.S.C. § 1983 and 42 U.S.C. § 1985.

In their motion, the defendants make four arguments: first, that they are protected by the Eleventh Amendment doctrine of state sovereign immunity, because they are officials of an agency of the State of Texas; second, that they are protected by the doctrine of qualified immunity as it has been articulated in the decisional law of the U.S. Supreme Court and the U.S. Court of Appeals for the Fifth Circuit; third, that DeKoker has failed to plead a violation of her First Amendment rights; and finally, that she was accorded sufficient due process protections during the course of her termination proceedings.

#### A. *Sovereign Immunity.*

■ As an initial matter, both § 1983 and § 1985 are derivative of provisions of the Ku Klux Klan Act, 17 Stat. 13 (1871), and are equally subject to the limitations of sovereign and qualified immunity. Therefore, for the purpose of addressing the defendants' immunity arguments, they are treated as possessing the same legal force. *See, e.g., Sessions v. Rusk State Hospital,* 648 F.2d 1066 (5th Cir.1981); *Wells v. Hutchinson,* 499 F.Supp. 174, 202 (E.D. Tex.1980).

The Eleventh Amendment clearly grants states and their agencies sovereign immunity from § 1983 judgments. *See, e.g., Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). For this reason, on September 25, 1987, the defendant Health Center was granted summary judgment on all of DeKoker's claims against it under the 1871 Civil Rights Act. It is equally well established that individual defendants benefit from Eleventh Amendment immunity when they are sued in their

official capacities for civil rights damages. In such a situation, "the state is the real, substantial party in interest and is entitled to involve its sovereign immunity from suit even though individual officials are nominal defendants." *Ford Motor Company v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945); *see also Governor of Georgia v. Madrazo*, 26 U.S. (1 Pet.) 110, 7 L.Ed. 73 (1828); *United Carolina Bank v. Board of Regents of Stephen F. Austin State University*, 665 F.2d 553, 557 (5th Cir.1982); *see generally* S. Nahmod, *Civil Rights and Civil Liberties Litigation*, § 5.08 (1986).

However, a damage suit against a state official is not barred, where the defendant is a party only in his personal capacity. *See Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Similarly, the Eleventh Amendment does not immunize state officials from an action for equitable relief from alleged constitutional violations, *Ex parte Young*, 209 U.S. 123, 159-60, 28 S.Ct. 441, 453-54, 52 L.Ed. 714 (1908), except where the remedy sought would be tantamount to an assessment of monetary damages from the state treasury. *See Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *United Carolina Bank v. Board of Regents, supra*, at 557; *Jagnandan v. Giles*, 538 F.2d 1166, 1173 (5th Cir.1976), *cert. denied*, 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1083 (1977). Within the category of prohibited equitable remedies against state officials are such forms of retroactive relief as the award of back pay or withheld cash benefits. *Edelman, supra*, 415 U.S. at 663-71, 94 S.Ct. at 1355-59; *United Carolina Bank, supra*, at 561; *Hander v. San Jacinto Junior College*, 519 F.2d 273, 278, *reh. denied*, 522 F.2d 204 (5th Cir. 1975).

 Accordingly, to the extent that DeKoker seeks equitable relief of a retroactive nature for the civil rights violations that she alleges, she does not plead a cognizable claim. Similarily, to the extent that she seeks damages from the individual defendants standing in their official capacities, she has failed to state a cause of

action for which any relief is permitted. Therefore, such claims shall be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). However, DeKoker may proceed against the individual defendants, in their official capacities, for prospective declaratory relief. *Cf. Edelman, supra*, 415 U.S. at 664, 94 S.Ct. at 1356. Furthermore, the Eleventh Amendment does not bar a cause of action for damages, based on § 1983, against a defendant in his personal (or "individual") capacity. *See Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

### B. *Qualified Immunity.*

 However, before Dekoker may take such damages claims to trial, this court first must make a threshold determination that the individual defendants are not protected by qualified immunity, as that doctrine has been articulated in the decisional law of the U.S. Supreme Court and the U.S. Court of Appeals for the Fifth Circuit. According to this doctrine, in order for DeKoker to maintain her 1871 Civil Rights Act claims against the four defendants, she must allege the violation of a specific right that is "clearly established," a right that is of such a character that "a reasonable person would have known" of its legal force. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Wood v. Strickland*, 420 U.S. 308, 321-22, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). According to the Supreme Court's *Harlow* standard,

> [o]n summary judgment, the [trial] judge appropriately may determine, not only the current applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "Know" that the law forbade conduct not previously identified as unlawful.

457 U.S. at 818, 102 S.Ct. at 2738; *see also Sampson v. King*, 693 F.2d 566, 570 (5th Cir.1982). Here, it is necessary to parse out the evidence presented, as well as the pleadings, to determine whether the rights allegedly violated were clearly established

by law, and reasonably knowable by the defendants.

### 1. DeKoker's First Amendment Claims.

In her complaint, DeKoker's First Amendment claim boils down to the contention that she was terminated, and not reinstated, in retaliation for the proper exercise of her right to speak and her freedom of association. If these allegations are proven, and if the defendants are not entitled to qualified immunity, DeKoker would be entitled to judgment, because a public employee may not be dismissed in retaliation for exercising her First Amendment rights. *Rankin v. McPherson*, — U.S. —, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); *Jett v. Dallas Independent School District*, 798 F.2d 748 (5th Cir.1986).

The speech in question here was DeKoker's disclosure of deficiencies that she supposedly had uncovered in Health Center timekeeping and payroll accounting techniques. Specifically, she states that she learned that the Health Center was overcompensating certain shifts of employees, and she estimated that this cost the Health Center hundreds of thousands of dollars annually. Therefore, the contended speech and association consisted in her oral and written reports of these systems defects to her three superiors, who are defendants in this action.

The defendants deny that she was discharged in retaliation for anything. In the alternative, they argue that DeKoker's reports and recommendations consisted of "negligent conclusions," and they add that her expressive acts were motivated by personal feelings—namely, her dissatisfaction that her research was ignored—rather than public spirit. *See* Defendants' Motion, at 8. The defendants contend that, in any event, timekeeping problems were an internal matter wholly committed to the discretion of the Health Center officials; they were not an issue of "public concern." *Id.*

■ Most of the defense arguments are not particularly helpful to the inquiry that the court must make here. As a general matter, the discretionary nature of a public official's decisions in no way re-

moves them from the arena of public debate. Indeed, since time immemorial, the expenditure of public money logically has been the subject of continuing public concern. It matters not that, in a particular case, a government official lawfully possesses the power to spend money (or, in the critic's eye, to waste money). Similarly, the commonest theme in all political debate is the wisdom of the decisions, discretionary or otherwise, made by government officials. No branch of government is above such criticism. In a truly democratic society, the operations of all levels of government are fair game for public comment, and the right of a citizen to take exception to an act of his government lies at the core of the First Amendment. It is irrelevant that the issue here is the prosaic one of a state agency's timekeeping protocols, instead of national foreign policy. Moreover, there is no orthodoxy against which a court can measure the "correctness," or "negligence," of a citizen's criticism. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974) ("[Under] the First Amendment there is no such thing as a false idea."). Nor does the record, in its current state, show DeKoker's remarks and ideas on this somewhat complicated matter to be false beyond peradventure. *See Lindsey v. Board of Regents of the University System of Georgia*, 607 F.2d 672, 675 (5th Cir.1979); *cf. Megill v. Board of Regents of the State of Florida*, 541 F.2d 1073, 1083 (5th Cir.1976) (inaccurate statements whose truth could easily be ascertained less deserving of protection). Finally, DeKoker's personal interest in the concern that she expressed does not derogate her claim to First Amendment protection. When the topic of the speech is plainly a matter of public interest, it is of little import that the speaker also has a personal interest in it. Military conscription is no less a political issue when a particular critic does not, himself, wish to be drafted. A state's tax policy does not cease to be a matter of public concern because its foes think their own assessments are too high. And the subject of expenditures in a state-run hospital does not lose the protection of the First Amend-

ment, simply because an employee also has a personal interest in seeing her recommendations implemented. *See Mount Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (issue of private concern to public employee may also be a matter of public interest).

█ The Health Center, and its management personnel in their official capacities, have obtained immunity from suit for § 1983 damages precisely *because* they are organs of Texas state government. The defendants cannot now have it both ways, and it logically follows that the operations and expenditures of the Health Center, like those of other state agencies, are proper subjects of public concern and citizens' comment. Therefore, these topics deserve the protection of the First Amendment. Indeed, speech concerning public affairs is entitled to *greater* protection than most other forms of expression, because it is "more than self-expression; it is the essence of self-government." *Connick v. Myers,* 461 U.S. 138, 145, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983), *quoting Garrison v. Louisiana,* 379 U.S. 64, 74–75, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964).

█ In short, DeKoker's communications addressed an issue of public concern, as well as of personal interest, so First Amendment protection attaches to their expression. Accordingly, the proper inquiry to make at this point is whether DeKoker's interest "as a citizen, in commenting upon matters of public concern is outweighed by the interest of the [government] as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968); *see also Gonzalez v. Benavides,* 774 F.2d 1295, 1297, 1299 (5th Cir.1985), *cert. denied,* 475 U.S. 1140, 106 S.Ct. 1789, 90 L.Ed.2d 335 (1986) (*Gonzalez II*); *see generally Mount Healthy, supra,* 429 U.S. at 283–84, 97 S.Ct. at 574. In practice, the court must scrutinize "the content, form, and context of a given statement, as revealed by the whole record," in order to determine the validity of the parties' various claims. *Connick, supra,* 461 U.S. at 147–48, 103 S.Ct. at 1690. To be considered are such questions as whether DeKoker's communications impeded her ability to perform her duties at the Health Center, whether she had disrupted her workplace, and the time, place, and manner of the speech at issue. *Gonzalez II, supra,* at 1300, *citing Connick, supra,* 461 U.S. at 151–53, 103 S.Ct. at 1692–93.[1]

After an examination of the exhibits filed with the defendants' motion, it appears that DeKoker did little more than to inform her superiors (defendants Hurst, Kilday, and Rayford) that she had discovered evidence of waste in the payroll accounting system. The form and context of her communications were private face-to-face meetings with the defendants, and the presentation of a written memorandum. There is no evidence that her manner was insolent, disrespectful, or insubordinate, when she expressed these concerns to them. The defendants have shown merely that, at about the time she spoke with her superiors, her relations with them soured, and she later was discharged. The evidence does not demonstrate that DeKoker's disclosures were so inappropriate or disruptive that workplace morale suffered, or that the efficiency of the Health Center's operations declined.

█ Moreover, the record is not so fully developed at this point that it can be said with certainty that DeKoker was terminated for extrinsic reasons unrelated to the timeclock controversy. Although some evidence has been presented to support this proposition, it is ambiguous and possibly self-serving. In any event, whether the

---

**1.** An additional desideratum articulated by the U.S. Court of Appeals for the Fifth Circuit is *whether the* government employee has sufficient discretionary authority to be able to "'make or break' the programs and policies of elected officials." *See Gonzalez v. Benavides,* 712 F.2d 142, 147–49 (5th Cir.1983) (*Gonzalez I*). In light of DeKoker's status and duties at the Health Center, and the nature of the Health Center's public functions, this factor is irrelevant to the matter under consideration here.

employee's speech is entitled to protection is all that the court needs to decide here. Whether DeKoker was discharged in retaliation for the speech, or for some other reason, should be left for the trier of fact to determine. *Roberts v. Van Buren Public Schools*, 773 F.2d 949, 954 (8th Cir. 1985); *Professional Association of College Educators v. El Paso City Community College*, 730 F.2d 258, 266 (5th Cir.), *cert. denied*, 469 U.S. 881, 105 S.Ct. 248, 83 L.Ed.2d 186 (1984). Accordingly, it is concluded that the DeKoker's claimed speech, respecting the Health Center timekeeping methods, was protected by the First Amendment.

It now must be decided whether the law discussed above was clearly established, and understandable to a reasonable person, when DeKoker left the Health Center. She was discharged in June, 1986. At that time, it was clearly established law that public employees do not surrender their First Amendment rights as a condition of employment. *See Keyishian v. Board of Regents*, 385 U.S. 589, 605–06, 87 S.Ct. 675, 684–85, 17 L.Ed.2d 629 (1967). Public employees plainly were protected from employer retaliation for exercising these rights. *See Mount Healthy, supra,* 429 U.S. at 283–84, 97 S.Ct. at 574. Where an employee's speech addressed a matter of public concern, it was protected by the First Amendment. *Connick, supra,* 461 U.S. at 145, 103 S.Ct. at 1689. That the speaker incidentally may have a personal stake in a public issue did not strip the speech of its protected status. *Mt. Healthy, supra; Gonzalez II, supra,* at 1301. Finally, it was clear, at the time of DeKoker's discharge, that private and decorous exchanges between an employee and her superiors, about such matters, did not lose their protected status. *Gonzalez II,* at 1303, *citing Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979); *Gonzalez I, supra,* at 150. Although the law demanded a case-by-case balancing of factors present in public employee speech controversies, the law itself was not unclear, nor was it difficult for a reasonable person to apprehend.

■ Therefore, the individual defendants are not entitled to qualified immunity on DeKoker's First Amendment claims. In light of the alleged content and topic of DeKoker's communications, their apparently limited circulation, and the dearth of evidence that they had a disruptive effect on the functions of the Health Center, DeKoker may proceed with her cause of action under § 1983 against the individual defendants. Accordingly, this element of the defendants' motion shall be denied.

2. DeKoker's Due Process Claims.

With respect to DeKoker's due process claims, the complaint alleges that her discharge was summary and arbitrary, and effected without constitutionally adequate notice or hearing. Specifically, DeKoker contends that she was denied the opportunity to present her side of the story at a pretermination hearing, and also that the one meeting to which she was summoned before her discharge was called without enough advance notice to enable her to prepare an effective presentation of her case.

On this issue, the facts, as well as their legal significance, are contested. It appears that, on May 29, 1986, DeKoker was summoned to a meeting with Rayford and Kilday. At that meeting, they handed her a memorandum dated May 28, which informed her that she was suspended for two weeks "during which time the appropriate administrative officers will decide on the next course of action." Memorandum of Larry J. Rayford to Georgia DeKoker (May 28, 1986), Exhibit 2 to Defendants' Motion, at 2; *see also* Deposition of Georgia DeKoker (n.d.), Exhibit 1 to Defendants' Motion, at 19–20. The May 28 memorandum refers, in turn, to four written complaints made by Health Center employees about DeKoker's work performance, but these complaints are summarized in vague and conclusory terms. For example, one complaint is characterized to have asserted that DeKoker's work was "totally unacceptable," that she had become "indignant," and that her "approach was totally inappropriate and illogical." Attributed to

another employee is his "great concern" over DeKoker's "insinuations," and "the contempt that [DeKoker] seem[s] to be directing towards him personally." Memorandum of Larry J. Rayford, *supra*, at 1. According to the uncontested evidence, upon reading this memorandum at the May 29 meeting, DeKoker requested copies of the four complaints alluded to in the May 28 memorandum. However, for reasons that are unclear, none of the defendants produced them until "months later," presumably after she was terminated. DeKoker depositions, *supra*, at 21.

The serious nature of the charges against DeKoker, the vagueness with which they were sweepingly characterized, and the fact that DeKoker had no notice of them *before* the May 29 "hearing" (as the defendants call the May 29 informal meeting) call into question the constitutional sufficiency of the procedures afforded to DeKoker during the pretermination phase of the events giving rise to this controversy. The "root requirement" of due process is that a deprivation of property—including an interest in continued employment—must be preceded "by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538, 542, 105 S.Ct. 1487, 1491, 1493, 84 L.Ed.2d 494 (1984); *see also Mullane v. Central Hanover Bank & Trust Company,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950); *cf. Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1971). This principle demands "some kind of hearing" prior to the discharge of an employee with a protected property interest in continued employment.[2] *Loudermill, supra,* 470 U.S. at 542, 105 S.Ct. at 1493; *Perry v. Sindermann,* 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972). A post-deprivation hearing may be sufficient to remedy the lack of predeprivation hearing only where there is inadequate opportunity to afford the notice and hearing before the deprivation occurs. *Brock v. Roadway Express, Inc.,* —— U.S. ——, 107 S.Ct. 1740, 1746, 95 L.Ed.2d 239 (1987); *Brown v. Texas A & M University,* 804 F.2d 327, 336 (5th Cir.1986).

 Because DeKoker alleges that she was deprived of a pretermination opportunity to respond to the complaints against her, she sufficiently alleges a due process violation under § 1983, and the defendants' motion to dismiss in this respect shall be denied. As for the defendants' motion for summary judgment, the evidence does not support their contention that, as a matter of law, DeKoker's due process claim lacks merit. Were she apprised of the four complaints against her at some modest interval before her pretermination hearing, and if she were articulately informed that termination was contemplated, it would be harder to say that she had no notice before the May 29 meeting with Kilday and Rayford, or no opportunity to respond at that "hearing." However, viewing the evidence in the light most favorable to the nonmoving party, it appears that she was, essentially, taken by surprise at the May 29 "hearing": she was told that she was suspended forthwith, and informed of nebulous complaints against her. Handicapping DeKoker's ability to respond on the spot, or later, were a number of factors, including the defendants' apparent reluctance to provide her with the four complaints that form the basis of the May 28 memorandum, and the defendants' seemingly studied vagueness about the ultimate action to be taken against her. *See* Deposition of Georgia DeKoker (n.d.), Exhibit 1 to Defendants' Motion, at 21; Deposition of Georgia DeKoker (n.d.), Exhibit 3 to Plaintiffs' Response, at 67; Rayford Memorandum, *supra.* Before she could obtain copies of the four complaints, and without prior notice that she was, in fact, to be terminated, she was sent a letter of separation. *See* Deposition of Georgia DeKoker (n.d.), Exhibit 3 to Plaintiff's Response, at 68–69; Letter of Larry J. Rayford to Georgia DeKoker (June 11, 1986), Exhibit 2 to Plaintiffs' Response.

---

**2.** The defendants do not contest DeKoker's property interest in continued employment at the Health Center.

Although the evidence presented in connection with their motion does suggest that the defendants undertook to give DeKoker an opportunity to respond *after* receipt of the four memoranda, this apparently did not occur at any time during the weeks before her discharge (nor, indeed, for many months thereafter). *See* Deposition of Georgia DeKoker (n.d.), Exhibit 3 to Plaintiffs' Response, at 69. Finally, there is no indication in the record that DeKoker's discharge had become such a matter of urgency that adequate pretermination notice and a hearing could not be provided.

At trial, the defendants' burden of proof is more relaxed. After all the evidence is in, the factfinder may agree that DeKoker was given sufficient pretermination notice and opportunity for hearing. However, the defendants have not satisfied the higher standard of proof for summary judgment.

 There can be no doubt that in mid–1986, at the time of the events in question, it was clearly established constitutional law that notice and a hearing of some sort must be provided to a public employee with an interest in continued employment. *Loudermill, supra,* 470 U.S. at 542–45, 105 S.Ct. at 1493–95. These requirements clearly included the employee's rights to "be advised of the cause for his termination in sufficient detail so as to enable him to show any error that may exist [and] a meaningful opportunity to be heard in his own defense within a reasonable time." *Levitt v. University of Texas at El Paso,* 759 F.2d 1224, 1228 (5th Cir.), *cert. denied,* 474 U.S. 1034, 106 S.Ct. 599, 88 L.Ed.2d 578 (1985), *citing Ferguson v. Thomas,* 430 F.2d 852, 856 (5th Cir.1970). The individual defendants are therefore not entitled to qualified immunity on DeKoker's claims as a matter of law. Furthermore, because the evidence does not clearly show that the law was followed, the defendants' motion on the procedural due process claims shall be denied.

C. *DeKoker's § 1985 Cause of Action.*

The defendants also argue that DeKoker has failed sufficiently to plead a violation of 42 U.S.C. § 1985. In her complaint,

DeKoker claims that the individual defendants conspired to violate her First Amendment rights by their agreement to discharge her in retaliation for the speech discussed above. The defendants assert in their motion that DeKoker's § 1985 claims are conclusory and unsupported by reference to material facts.

Section 1985(3) allows for the recovery of damages against groups of individuals who

> conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws; or of equal privileges and immunities under the laws ...

The U.S. Supreme Court has construed this statute to require the pleading and proof of "some racial, or perhaps otherwise class-based, invidiously discriminating animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *see also Henzel v. Gerstein,* 608 F.2d 654 (5th Cir. 1979). In short, while § 1983 prohibits deprivations of civil rights, § 1985 prohibits something entirely different, namely a conspiracy motivated by a discriminatory intent to deprive someone of civil rights.

 DeKoker has failed either to allege such a conspiracy, or to adduce facts suggesting its existence. The presence of Title VII employment discrimination claims are not enough to show that the alleged thwarting of her free speech rights were the result of a § 1985 conspiracy. In fact, beside DeKoker's conclusory allegations in the complaint, and in her affidavit in response to the defendants' motion, the only concrete evidence she can show is that Turman admitted having "discussed" the DeKoker situation with Rayford. *See* Affidavit of Georgia DeKoker (Dec. 18, 1987), Exhibit 1 to Plaintiff's Response, at ¶ 7; Deposition of David S. Turman (n.d.), Exhibit 4 to Plaintiffs' Response, at 13. Neither DeKoker's complaint, nor her evidence, satisfies the requirement that § 1985 conspiracies be pled with particularity. *See Sparks v. Duval County Ranch Company,* 604 F.2d 976, 978 & n. 3 (5th Cir.1979), *cert. denied,* 445 U.S. 943, 100 S.Ct. 1339, 63 L.Ed.2d 777 (1980); *Slotnick*

v. *Staviskey*, 560 F.2d 31 (1st Cir.1977), *cert. denied*, 434 U.S. 1077, 98 S.Ct. 1268, 55 L.Ed.2d 783 (1978); *Zentgraf v. Texas A & M University*, 492 F.Supp. 265, 272 (S.D. Tex.1980). Accordingly, her § 1985 claim shall be dismissed.

### III. THE TITLE VII CAUSE OF ACTION.

Finally, DeKoker and her co-plaintiff, Lyndalee Schweitzer, another former employee of the Health Center's computer department, claim that they were discriminated against on the basis of sex, in violation of Title VII, 42 U.S.C. §§ 2000 *et seq.*, and that the Health Center maintains sexually discriminatory policies respecting hiring, job assignment, promotion, and termination. They seek damages, equitable relief, and attorney's fees. On the defendants' motion, the Health Center contends neither plaintiff has made out a prima facie case on sex discrimination, and points to evidence that it casts as negating the plaintiffs' claims.

 It must be noted at the outset that both plaintiffs concede that they were not victims of hiring discrimination. Plaintiffs' Response, at 11. Therefore, summary judgment on this particular element of the Title VII claim shall be granted, because neither plaintiff has standing to assert it. With respect to the remainder of the plaintiffs' employment discrimination causes of action, the evidence is ambiguous; thus, issues of material fact exist. According to the stringent standards applied to summary judgment and dismissal motions, discussed below, the defendants' motion shall be denied as it addresses the remaining Title VII claims.

### IV. CONCLUSION.

As a general rule, motions to dismiss pursuant to Fed.R.Civ.P. 12 are denied where the plaintiffs' allegations, if true, would entitle them to relief. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Here, with two exceptions—DeKoker's § 1983 causes of action for dam-ages and retroactive equitable relief against Hurst, Turman, Kilday, and Rayford in their official capacities, and her claim under § 1985—all of the civil rights and Title VII counts of the complaint make claims for which relief can be granted.

In order for the defendants to prevail on their alternative summary judgment motion pursuant to Fed.R.Civ.P. 56, they must demonstrate that the case in its current posture presents no genuine issue of material fact, and that they are entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Adickes v. S.H. Kress & Company*, 644 F.2d 424, 428 (5th Cir.1981); *Kellerman v. Askew*, 541 F.2d 1089, 1092 (5th Cir.1976); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* §§ 2725 & 2727 (1983).

The defendants have not shown that, in their individual capacities, they are entitled to qualified immunity as a matter of law on the First Amendment and due process claims under § 1983. With respect to two other summary judgment arguments—that DeKoker's termination was warranted on grounds unrelated to the exercise of her free speech rights, and that DeKoker and Schweitzer were not the victims of discriminatory employment practices—the ambiguities in the pleadings and evidence must be construed in the light most favorable to the plaintiffs, who are the non-moving parties here. As for the due process claim, the defendants may adduce additional facts to show that DeKoker was, in fact, accorded her pretermination procedural rights. However, on this motion, there is not enough evidence, and doubts about the existence of material facts must be resolved in favor of the non-moving party. *See Adickes, supra*, at 156–57; *Harrison v. Byrd*, 765 F.2d 501, 504 (5th Cir.1985); *Murphy v. Georgia–Pacific Corporation*, 628 F.2d 862, 866 (5th Cir.1980); *Kennett–Murray Corporation v. Bone*, 622 F.2d 887, 892 (5th Cir.1980). Furthermore, the case law of this circuit cautions against the use of summary judgments in employment discrimination cases, where nebulous ques-

tions of motive and intent are often at issue. *See, e.g., Thornbrough v. Columbus and Greenville Railroad Company,* 760 F.2d 633, 640–41 (5th Cir.1985); *Clark v. Tarrant County,* 798 F.2d 736, 746 (5th Cir.1986); *Jones v. Western Geophysical Company of America,* 669 F.2d 280, 283 (5th Cir.1982); *Hayden v. First National Bank of Mount Pleasant,* 595 F.2d 994, 997 (5th Cir.1979).

On their motion for summary judgment "the moving part[ies] [must] establish [their] right to judgment with such clarity that the non-moving party cannot recover ... under any discernible circumstances." *Everhart v. Drake Management, Inc.,* 627 F.2d 686, 690 (5th Cir.1980). Although the defendants advance evidence and arguments that may prove to be dispositive at trial, the stricter standards that obtain for summary judgment are not met. It is impossible to say that either plaintiff could not prevail under any discernible circumstances. After a review of the evidence in the light most favorable to DeKoker and Schweitzer, genuine issues of material fact are found to emerge from the record. These issues respect most of the discrimination claims, and all of the § 1983 causes of action against the individual defendants.

Accordingly, the defendants' motions for dismissal and for summary judgment shall be denied, except as otherwise set forth herein. It is

ORDERED that the defendants' motion to dismiss the plaintiff Georgia DeKoker's causes of action for damages, under 42 U.S.C. § 1983, against defendants George A. Hurst, M.D., David S. Turman, Dennis P. Kilday, and Larry J. Rayford, in their capacities as officials of the State of Texas, shall be, and it is hereby, GRANTED. It is further

ORDERED that the defendants' motion to dismiss the plaintiff Georgia DeKoker's causes of action for retroactive equitable relief, under 42 U.S.C. § 1983, against defendants George A. Hurst, M.D., David S. Turman, Dennis P. Kilday, and Larry J. Rayford, in their capacities as officials of the State of Texas, shall be, and it is herby, GRANTED. It is further

ORDERED that the defendants' motion to dismiss the plaintiff Georgia DeKoker's cause of action under 42 U.S.C. § 1985 shall be, and it is hereby, GRANTED. It is further

ORDERED that the defendants' motion for summary judgment on the plaintiffs' employment discrimination claims pursuant to Title VII, 42 U.S.C. §§ 2000 *et seq.,* shall be, and it is hereby, GRANTED to the limited extent that said claims allege hiring discrimination, but, in all other respects, the defendants' motion shall be, and it is hereby, DENIED. It is further

ORDERED that the defendants' motion to dismiss, or in the alternative for summary judgment on, plaintiff Georgia DeKoker's causes of action for damages, under 42 U.S.C. § 1983 against defendants George A. Hurst, M.D., David S. Turman, Dennis P. Kilday, and Larry J. Rayford, in their personal or individual capacities, shall be, and it is hereby, DENIED. It is further

ORDERED that the defendants motion to dismiss, or in the alternative for summary judgment on, plaintiff Georgia DeKoker's causes of action for prospective declaratory or injunctive relief, under 42 U.S.C. § 1983 against defendants George A. Hurst, M.D., David S. Turman, Dennis P. Kilday, and Larry J. Rayford, in their capacities both as individuals and as officials of the State of Texas, shall be, and it is hereby, DENIED. It is further

ORDERED that the defendants' motion to dismiss, or in the alternative for summary judgment on, all other claims and issues shall be, and it is hereby, DENIED.